# SMITH v. DAVIS.*

### NUISANCES; NEGLIGENCE.

1. The piling of lumber in a public street, and the keeping of it there for an unreasonable time or in an unreasonable manner, is a nuisance, and is negligence; and, if one is injured thereby, both the owner of the lumber and the municipality are liable in damages to the person so injured.

2. Where a child of about nine years of age in company with other children seated herself on one of several piles of lumber in a public street, and an adjoining pile fell and she was injured, it is no defense to the municipality or the owner of the lumber that it was carefully stacked or piled, and care had been taken to make it secure against possible accident; or that there was nothing to show that its falling was fairly attributable to the negligence of the owner,—especially where there is also nothing to show that the children did anything to cause the lumber to fall other than by seating themselves on one of the piles. The fact that the lumber did fall and inflict an injury is sufficient proof to justify the inference that it was liable to fall, and that there was a probability of the occurrence of such an accident as did in fact occur.

No. 1298.    Submitted May 15, 1903.    Decided June 25, 1903.

HEARING on an appeal by the defendants from the judgment of the Supreme Court of the District of Columbia upon the verdict of the jury in an action to recover damages for personal injuries.                                           Affirmed.

The COURT in the opinion stated the facts as follows:

This action was brought by the appellee, by her next friend, against Thomas W. Smith and the District of Columbia to re-

*Highways — Obstructions in — Children. — See also the following editorial notes presenting the authorities on their respective subjects: Right of children to protection against dangerous conditions of highway, note to Gibson v. Huntington, 22 L. R. A. 561; right of abutting owner to place building material in street, note to Raymond v. Kiseberg, 19 L. R. A. 643; obstruction of street or sidewalk for business or building purposes, note to Flynn v. Taylor, 14 L. R. A. 556.

cover damages for injuries sustained by reason of the wrongful erection and maintenance of a pile of timber in one of the public streets in the city of Washington.

The facts as set out in the bill of exceptions appear to be these:—Thomas W. Smith is a lumber merchant in the city of Washington, and near to or adjoining the lot upon which he had his lumber yard, he had erected and maintained piles of heavy timber 12 x 12 inches square, and between 16 and 18 feet in length, at the intersection of Fourth street, southeast, and Georgia avenue, within the limits of the public street or highway; that the pile of lumber causing the injury complained of had been allowed to remain there, with the knowledge and consent of the authorities of the District of Columbia, for about eight months; that the portion of the street upon which the lumber was piled was paved with bluestone, and such pavement extended across the driveway of Fourth street and from 6 to 10 feet south of where the lumber was piled; and though a public street, and paved as stated, it had not been much used as a thoroughfare; that on the afternoon of the 23d of July, 1901, about 7 o'clock, the plaintiff, who was about nine years old, in company with her playmates, Maisie Cissell and Mabel Jones, walked down Fourth street to the river front, and, on their way back, they sat down on one of the piles of lumber; that while sitting there an adjoining pile, immediately north of the one on which the three children were seated, composed of timber of the size before mentioned, without any warning or apparent cause, tumbled down, and one of the said pieces of timber falling upon the plaintiff, lacerated her right cheek, and caused the loss of the sight of her left eye; that at the time of the accident the plaintiff was in good health, bright and well grown, and a pupil of the third grade of the public schools.

The case was tried before a jury, on a plea of not guilty, and a verdict was rendered for the plaintiff for $3,500, upon which judgment was entered, and from which this appeal was taken by the defendants.

At the conclusion of the evidence, there were two prayers for instruction offered on the part of the plaintiff, the first of which

was granted as modified, and the other rejected. On the part of
the defendants, there were two separate series of prayers of-
fered, but nearly all of which were rejected; and among the
prayers offered by the defendants and rejected were prayers re-
questing that the case should be withdrawn from the jury. The
defendants excepted to the granting of the prayer for the plain-
tiff, and to the refusal to grant the prayers on the part of the
defendants. There was quite a full charge given by the court
to the jury, but it does not appear that there was any exception
taken to it.

The instruction granted at the instance of the plaintiff was in
the following terms:

"1. The jury are instructed, as matter of law, that if they
find from the evidence that there was placed in the street, in
either Fourth street or Georgia avenue, a pile of lumber by the
defendant Smith, and that it had been there for some months
prior to the plaintiff's injury, then they are instructed, as matter
of law, that the pile of lumber constituted an unlawful obstruc-
tion in the street; and if they further find from the evidence that
the pile of lumber fell, and that by the falling thereof the plain-
tiff was injured, then they are instructed, as matter of law,
that the plaintiff is entitled to recover; and if they shall find for
the plaintiff they shall award against the defendants such sum
as will be fair and adequate compensation for such physical pain
and suffering, and such personal inconvenience and injury, and
for such mental suffering, as they may find from the evidence,
that resulted from and was attendant upon as a natural incident
to the accident. And if they find that the injuries sustained by
her are permanent in character, they should award such damages
as will compensate her for such suffering of mind and body, and
such personal inconvenience and injury, if any, as they may
find from the evidence she will suffer in the future, by reason
of such injury; unless they shall further find from all the evi-
dence that the plaintiff was guilty of negligence as defined in de-
fendant's, the District's, second prayer."

The second prayer granted on behalf of the defendant, the Dis-
trict of Columbia, and which is referred to and to be read in con-

nection with the instructions given at the instance of the plaintiff, as defining negligence that would disentitle the plaintiff to recover, is in the following terms:

"2. The jury are instructed that it was the duty of the plaintiff while upon the public street to use reasonable care and caution to avoid danger, such as children of her age, maturity, and capacity would use under the same circumstances, and that, in determining whether the plaintiff used such care and caution at the time of her alleged injury, the jury will consider the nature of the alleged obstruction in the street, its size and appearance, and such other facts or circumstances disclosed by the evidence as tend to show the alleged negligence or the absence of it; and if they find from the evidence that the plaintiff was guilty of any negligence as aforesaid which directly contributed to her injury, then she cannot recover, and they will find for the defendants."

[The following prayers asked on behalf of the defendant, the District of Columbia, were rejected or modified and exceptions were duly reserved:

"1. The jury are instructed that upon the pleadings and the evidence in this case, the defendant, the District of Columbia, is not liable, and their verdict should be for the District of Columbia.

"3. The jury are instructed that the defendant, the District of Columbia, is not an insurer against accidents upon its streets, nor is it liable for injuries resulting from an obstruction therein, except upon neglect on its part to remove, or to cause to be removed, within a reasonable time after knowledge or notice that such obstruction is or has become dangerous.

"4. The jury are instructed that there is no evidence of express notice to the District of Columbia that the pile of lumber in Fourth street at the point where and at the time when the plaintiff was injured was in an unsafe and insecure condition, or was dangerous to passers-by, and their verdict must be for the said defendant, unless the jury find from the evidence that said pile of lumber was in fact in an unsafe or insecure condition or dangerous to passers-by, and such, its dangerous condition, was so notorious and conspicuous and had continued for so long a

time that the authorities charged with the inspection of the
street would, in the proper performance of their duty, have
known it was dangerous.

"5. The jury are instructed that there is no sufficient evidence
in this case that the District of Columbia had constructive no-
tice that Fourth street, at the point where and the time when
the plaintiff was injured, was dangerous to pedestrians by rea-
son of the lumber piled therein.

"6. The jury are instructed that there is no evidence in this
case that the pile of lumber, mentioned in the evidence was in
an unsafe or dangerous condition in Fourth street where the
plaintiff was injured for such a length of time as the defend-
ant, the District of Columbia, should be charged with notice of
its dangerous condition at the time of the plaintiff's injury.

"7. The jury are instructed that the burden of proof is upon
the plaintiff to show affirmatively by a preponderance of the evi-
dence in this case that the accident whereby she was injured was
the result of negligence on the part of the defendants as set forth
in the declaration; and if such negligence is not shown by such
preponderance of evidence then the plaintiff is not entitled to re-
cover and the verdict should be for the defendants [and the
jury are further instructed that they are not at liberty to find the
defendant guilty of negligence and liable for damages from the
mere happening of the accident by which the plaintiff was in-
jured].

"(Granted as modified, the modification consisting of striking
out that portion in brackets.)

"8. The jury are instructed that the lumber pile in Fourth
street, as described in the evidence, was not *per se* a dangerous
obstruction in said street, and the District was not guilty of ac-
tionable negligence by the mere fact of allowing it to be and
remain in said street.

"9. If the jury believe from the evidence that the lumber in
Fourth street, mentioned in the evidence, was piled safely when
put there, and that thereafter there was no indication of its in-
security or likelihood of its falling apparent upon reasonable in-
spection thereof, it was not incumbent upon the District or its

officers to make tests; or otherwise to experiment therewith, to ascertain whether it could or would fall or be thrown down.

"10. If the jury believe from the evidence that the pile of lumber where the plaintiff was injured was piled and standing in a safe and secure manner and condition on the morning of the day of the accident to the plaintiff, and, without notice to the public authorities, it became unsafe by the wrongful act or interference of some third person, and thereafter about 6 o'clock P. M. on the same day, the plaintiff was injured by the falling of said lumber, the District of Columbia cannot be held liable in this action, and their verdict must be for the defendant, the District of Columbia.

"11. The duty of the public authorities to inspect the streets in order to ascertain the presence of, and guard against, accidents from dangerous obstructions therein is not uniformly the same, but is dependent on the locality, the extent and character of public use and the nature of surroundings, etc., of the streets; that is to say, a greater degree of care is required in some localities than in others; and the jury are instructed that if they believe from the evidence that at the time of the plaintiff's injury Fourth street south of Georgia avenue was unimproved and without sidewalks, and that the said street was only occasionally used by the public, the law does not require the same, or an equal, degree of care for the purpose aforesaid as would be required in the case of a street, improved and with sidewalks, in a more central and generally frequented part of the city."

The following prayers asked on behalf of the defendant Smith were rejected, and exception reserved:

"1. The jury are instructed upon the whole evidence in this case that the plaintiff is not entitled to recover, and their verdict should be for the defendants.

"2. If the jury believe from the evidence that the defendant, Smith, at the time of the injury exercised ordinary care at the place of the injury to keep children from playing on the pile of lumber in question, then, notwithstanding the accident happened, whereby the plaintiff was injured, the plaintiff is not entitled to recover, and their verdict should be for the defendants.

"3. The jury are instructed that the defendant Smith was under no obligation to keep his lumber piled in a safe condition for children to play upon, and that he was also under no obligation to so pile his lumber as to prevent injury to children playing upon it, or to fasten or secure said lumber so that children while trying to climb thereon could not pull one or more pieces down on themselves; nor can the defendant Smith be held negligent for failing to so pile, brace, or secure his lumber as to have prevented it from falling on the plaintiff, if the plaintiff was at the time of the accident playing on said pile of lumber without his knowledge or consent.

"4. If the jury believe from the evidence that the watchman employed by the defendant Smith saw the plaintiff and two other children coming from the direction of the river shortly before the accident, and that the plaintiff and the two other children, after passing the pile of lumber in question and out of sight of the watchman, without his knowledge, turned aside and climbed on said pile of lumber for the purpose of play, and while playing alongside said pile of lumber and without the watchman having knowledge that she was there, the plaintiff or the two other children pulled down on her, or caused to fall upon her, a piece of said lumber, and was injured, then the plaintiff is not entitled to recover, and the verdict should be for the defendants.

"5. The jury are instructed that in determining whether the injury to the plaintiff was occasioned by negligence or want of ordinary care on the part of the defendant Smith in failing to keep children away from the pile of lumber mentioned in the evidence, they are to consider all the attending facts and circumstances, but in no event are they at liberty to presume negligence or want of ordinary care on his part from the mere happening of the accident. Whether the accident happened by reason of negligence or want of ordinary care on Smith's part must be proved by affirmative evidence, and the burden of proving such negligence or want of ordinary care is on the plaintiff.

"6. If the jury believe from the evidence that the watchman employed by the defendant Smith saw the plaintiff, and two other children who were with her, immediately before the acci-

dent, as they came along Fourth street toward the river, and warned the plaintiff, and the two other children, not to get on the lumber, and that thereupon the plaintiff and the two children who were with her turned from the course they were going and went around the pile of lumber in question and out of the view of the watchman, as though they were going toward a wood yard some distance away, then said watchman had a right to suppose the plaintiff, and the two other children, when duly warned, would not attempt to climb on the lumber; and, if such warning was given and not heeded, then the plaintiff is not entitled to recover.

"7. If the jury believe from the evidence that the pile of lumber which fell upon the plaintiff was in a reasonably safe condition about noon of the day of the accident, and that some time thereafter, and before the accident, said pile of lumber, without the knowledge of the defendant, was rendered insecure and unsafe by the act of some third person, then the defendant Smith was not guilty of negligence, and their verdict should be for the defendants.

"8. If the jury believe from the evidence that the pile of lumber in question, belonging to the defendant Smith, was carefully piled on an unimproved street or highway and in a part of the city that was not built up or densely populated; that the plaintiff and two other children who were with her, without the knowledge of the defendant, Smith, climbed upon said pile of lumber for the purpose of playing thereon, and, while the plaintiff and the said two other children were playing on said pile of lumber, a portion of the lumber fell and injured the plaintiff, the plaintiff cannot recover in this action, and their verdict must be for the defendants."

"10. If the jury believe from the evidence that the lumber in question was not piled upon any public park, but was placed upon vacant land belonging to the United States and the adjoining premises of the defendant, they are instructed that the defendant was guilty of no breach of law in so placing it."—RE-PORTER.]

Vol. XXII—20

*Mr. S. T. Thomas* for the appellant Smith, and *Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the appellant the District of Columbia:

1. To entitle the plaintiff in an action of this kind to recover damages, he must show, not only that he has sustained an injury, but that the defendant has been guilty of some negligence which caused the injury complained of. In other words, the negligence alleged and the injury complained of must bear the relation of *cause* and *effect.* There must be a logical relation and connection between the circumstances proved and the conclusions sought to be deduced from them. There are cases where the circumstances surrounding an occurrence and giving a character to it are held, if unexplained, to indicate the antecedent or coincident existence of negligence as the proximate cause of the injury complained of, and there are instances where the doctrine of *res ipsa loquitur* is applied. But this maximum is inapplicable here, as the pile of lumber that fell and injured the plaintiff was certainly not an agency "so obviously destructive of person or property and so tortious in quality" (Thompson on Neg. 574) as to permit of no inference save that of negligence on the part of the owner. But assume for the sake of argument that it was more than the mere isolated fact that the injury happened should have been proved; the injury, without more, did not necessarily indicate the *cause* of that injury. There was a *cause* for the falling of the lumber, and this should have been shown as well as the *effect.* *Nitro-Glycerine Case,* 15 Wall. 524. The plaintiff made no attempt to show why the lumber fell, and there was, therefore, no justification for the application to the case of the doctrine *res ipsa loquitur.* Where an axe flew from the handle and fell from the fifth story of a building and injured an employee, it was held that the mere happening of the accident was not sufficient to show negligence if other evidence showed care under the circumstances. *Stearns* v. *Ontario Spinning Co.* 184 Pa. 519. To the same effect are: *Huey* v. *Gallenbeck,* 121 Pa. 238; *Cosulich* v. *Standard Oil Co.* 122 N. Y. 118; *Kendall* v. *Boston,* 118 Mass. 234; *Huff*

v. *Austin,* 46 Ohio St. 386; *Brunner* v. *Blaisdell,* 170 Pa. St.
25; the governing principles of which are peculiarly applicable
to the case in hand. Mere proof in this case that the lumber
fell did not establish an accident of such an unusual character
as to raise an inference of negligence. But, had it been other-
wise, any inference of negligence was completely met and re-
butted by proof by the defendants, which showed, as a matter of
fact, that all proper and reasonable care was exercised. *Penna.
R. Co.* v. *McKinney,* 124 Pa. 462; *Searles* v. *Manhattan R. Co.*
101 N. Y. 661; 2 Thomp. on Neg. p. 1227. Where a servant
was injured by the breaking of a chain used in raising a
wrecked and derailed car, it was said: "The mere fact of the
breaking of the chain is not sufficient to authorize the inference
or presumption that the master had failed to exercise reason-
able care in its detection." *Brymer* v. *Southern Pac. E. Co.,*
90 Cal. 496. Where the alleged cause of an injury was the
bursting of an emery wheel, unexplained, it was held the plain-
tiff could not recover. *Simpson* v. *Pittsburgh, Etc., Works,* 139
Pa. St. 245. The fact that a fly-wheel burst, and one of the
fragments was thrown across the street into a saloon, and there
struck and killed the plaintiff's intestate is not prima facie evi-
dence of negligence. *Piehl* v. *Albany Railway,* 30 App. Div.
166 (affirmed in 162 N. Y. 617). Where a car wheel broke
from some cause unknown, and caused injury, it was held that
this was not sufficient to take case to the jury. *Morrison* v.
*Phillips,* 44 Wis. 410. Where an employee was injured by the
fall of a dirt plow from a car, and the trial court held that the
jury were at liberty to infer negligence from the fact of the
falling of the plow, the appellate court reversed the judgment
on the ground that no such presumption arose. *De Van* v. *P. &
N. Y. C. & H. R. Co.* 130 N. Y. 632. Where an injury was
caused by the breaking of a derrick, it was held that no presump-
tion of negligence arose. *Duffey* v. *Upton,* 113 Mass. 547. See
also *Fuchs* v. *City of St. Louis,* 67 S. W. Rep. 610. Elliott on
Roads and Streets, 2d ed., §826. *South Baltimore Car Works*
v. *Schaffer,* Balto. Daily Rec. Dec. 26, 1902; *Hewitt* v. *Railway
Co.,* 67 Mich. 61; *Quincy Mining Co.* v. *Kitts,* 42 Mich. 61.

2. The defendant Smith and the District of Columbia, respectively, exercised due care, and thus met and rebutted any inference of negligence from the mere happening of the accident. *Mann* v. *Davis Oil Co.* 61 Fed. Rep. 631; *Hood* v. *Washington Park Club,* 157 Ill. 119; *Doherty* v. *Sweetzer,* 82 Hun, N. Y. 556; *Myers* v. *Hinds,* 110 Mich. 300; *Lincoln* v. *French,* 105 U. S. 611; *Fresh* v. *Gilson,* 16 Pet. 327; *Griffen* v. *Manice,* 166 N. Y. 198; *Hubener* v. *Heide,* 73 App. Div. N. Y. 200.

3. The piece of lumber that struck the plaintiff fell from a pile of lumber, and was not the proximate cause of her injuries. *Goodlander Mill Co.* v. *Standard Oil Co.* 63 Fed. Rep. 400; *Insurance Co.* v. *Boon,* 95 U. S. 130; *Railway Co.* v. *Kellogg,* 94 U. S. 469.

4. Whether the piles of lumber in the street were dangerous obstructions thereon was a question of fact which should have been submitted to the jury. It is well-settled law that the municipality is not an insurer against accidents upon its streets. *Dist. of Col.* v. *Woodbury,* 136 U. S. 450. Lumber in a street properly and securely piled, is not *per se* a dangerous obstruction to pedestrians. Whether it is dangerous or not depends upon its location, size, and many circumstances, and these facts are within the province of the jury, and not within the province of the court to determine; but the trial court ruled, as matter of law, that the lumber pile was a dangerous obstruction, and that it was immaterial whether the repeated and recent inspections of the police officer disclosed that the pile was safe and secure, and that it was immaterial whether the District had notice or not of the change from an ascertained safe condition to that of an unsafe and dangerous condition. *Dist. Col.* v. *Woodbury,* 136 U. S. 450, 463; *Dist. Col.* v. *Moulton,* 182, U. S. 576; *Dist. Col.* v. *Boswell,* 6 App. D. C. 402; *Herfurth* v. *Washington,* 6 D. C. 288; *Corts* v. *D. C.* 18 D. C. 277; *Free* v. *D. C.* 21 D. C. 608. See also *Abbott* v. *Macfie,* 33 L. J. 177; *Mangan* v. *Atterton,* L. R., 1 Ex. 239.

5. The theory of the defendant Smith's eighth prayer was that, having piled his lumber on an unused part of Fourth street, he was not to be held to the same degree of care as if the lum-

ber had been placed on a busy thoroughfare.  The effect of
overruling this prayer was to hold the defendants to a higher
degree of vigilance than the facts and circumstances of the
case warranted.  The degree of care a municipality is required
to exercise to keep its streets in safe condition for public travel
must always be in proportion to the nature and magnitude of in-
juries likely to result from occurrences that are to be antici-
pated and provided against.  *New York* v. *Bailey,* 2 Denio, 452.
In accordance with this principle, it has often been held that the
more populous the thoroughfare the greater is the degree of
vigilance necessary on the part of the municipality.  *Smid* v.
*New York,* 126 N. Y. Supp. 126; Elliott on Roads and Streets,
2d ed. § 409; Williams, Munic. Liability, § 107; Smith Mod.
Law Munic. Corp. § 1524.

6.  The acts of negligence alleged were not joint.  The
acts of negligence complained of were not concerted
between the defendants.  Mr. Smith's act in piling lumber on
the street was of a distinct and different nature from the act of
the District authorities in allowing him to place it there.  One
.was active and the other passive, and hence a joint action can-
not be maintained.  Cooley on Torts, 2d ed. 142; *Weist* v. *Phila.*
58 L. R. A. 666.

*Mr. John R. Shields* and *Mr. John C. Gittings,* for the ap-
pellee:

1.  Appellees' contention is that the piling of lumber in a pub-
lic highway for the purpose of storage by a private citizen, with
the knowledge and consent of the District of Columbia, and
allowing same to remain there for more than eight months, *con-
stituted a nuisance per se,* which proposition, it seems to us, hard-
ly admits of argument.  2 Dillon on Municipal Corporations, 4th
ed., §§ 659, 660; *Libbey* v. *District of Columbia,* 9 App. D. C.
321; *Cogswell* v. *Railroad,* 103 N. Y. 10.

2.  That where such a public nuisance exists, and damage of a
special and particular character is sustained by one lawfully on
the highway, an action will lie; and it is a matter of no impor-

tance whether Smith, the party who placed the unlawful nui
sance in the highway, and the District of Columbia, which con
sented to its remaining there, used the highest degree of care in
guarding against accidents, as such evidence is immaterial and
irrelevant.    The negligence consists of the placing and main-
taining of the *unlawful nuisance in the highway,* and not in the
*manner in which it was maintained.*    2 Dillon on Municipal Cor-
porations, 4th ed., § 1032; *Sullivan* v. *Dunham,* 161 N. Y. 290;
Wood on Nuisances, § 744; *Parker* v. *City of Macon,* 39 Ga.
735; *Chatterton* v. *Scranton,* 94 Pa. 202; *Manchester* v. *Quim-
by,* 60 N. H. 10; *Gridley* v. *Bloomington,* 68 Ill. 48; *Cosgrove*
v. *Smith,* 18 N. Y. 79, 82; *Speare* v. *Brooklyn,* 139 N. Y. 6;
*Baltimore City* v. *O'Donnell,* 53 Md. 110; *Baltimore. City* v.
*Marriott,* 9 Md. 160.

The appellants contend that the doctrine of *res ipsa loquitur*
is inapplicable to these cases, and a large number of authorities
are cited on their brief in support of this proposition.    All of the
cases cited can be classified under the following heads:
1st.    Where the question of fellow servant was involved.
2d.    Where the question of employer and employee was involved.
3d.    And several other cases where the facts prove affirmatively
that there was no negligence.    All of said decisions seem to be
law as applied to the particular state of facts in each case, but
none can be said to throw any light on the question of whether
or not the falling over of a lumber pile without any apparent
cause on a calm afternoon, unexplained, is susceptible of any
other·reasonable inference than but that it was improperly and
negligently piled or maintained.    We only care to cite *Earle* v.
*Crouch,* 10 N. Y. Supp. 882.    Affirmed in 61 Hun, 48, and
again Affirmed in 131 N. Y. 613.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

There are numerous assignments of error made by the appel-
lants; but 'in substance they are all reducible to two questions
that cover the case:    (1st) Whether the piling the lumber in the
street or in the public way ·constituted an unlawful obstruction,

such as would make it a public nuisance? and if so, (2d) whether the defendants are liable for the injury resulting therefrom to the plaintiff, under the facts of the case.

1. In the declaration, it is alleged that the District of Columbia, with knowledge, wrongfully and negligently suffered and allowed the defendant Smith to place and maintain, without a permit so to do, on Fourth street, etc., large piles of lumber and heavy timbers, and that the plaintiff, a child of ten years of age, while lawfully playing on the said public highway in the neighborhood of said lumber piles, on the 23d day of July, 1901, using due care, sat upon a pile of said heavy timber for the purpose of resting herself; and that said piles of lumber and timber were so carelessly, negligently, and unskilfully stacked by the defendant Smith, his agents, etc., that, without any warning to, or cause applied by, the said plaintiff, one of said heavy timbers fell from an adjoining pile upon her head and chest, from the force of which she was violently thrown to and fell upon the ground with said heavy timber pinning her down, and that by reason of said blow, and her fall therefrom, she then and there suffered severe laceration of her right cheek, besides suffering severe pain in her eyes and other parts of her head and chest, etc., and has therefrom permanently lost the use of her left eye, etc.

The facts thus charged, if shown to be true, would certainly establish the existence of a public nuisance in the street, and an actionable injury suffered by the plaintiff. It is well settled that a building, or other structure, or the placing of materials, such as lumber or coal, for an unreasonable time or in an unreasonable manner, upon a street or highway without the sanction of the legislature, is a public nuisance, and the municipal corporation in whose streets such nuisance may exist cannot give a valid permission thus to occupy its streets without express power to this end conferred by charter or statute. The usual power to regulate and control streets has never been held to authorize the municipal authorities to allow them to be encroached upon by the adjoining owners, by erections thereon of buildings, or the use thereof as places of deposit for lumber, or coal, or other

materials, for their own exclusive use. And such continuous obstruction of a public street or highway, not authorized by competent legal authority, is a public nuisance, for which the authors of it may be held liable. 2 Dill. Mun. Corp., § 660, and cases there cited. The piling of the lumber and keeping it within the limits of the street was, therefore, a nuisance and a wrong as against the public, and all suffering private injuries in consequence of its existence. And the municipal corporation, having ample power to prevent or remove the nuisance, is equally liable with the creator of it for any injury that may result therefrom. Wood, Nuisances, § 744, and cases there cited. See also a leading case upon this subject, *Parker* v. *Macon,* 39 Ga. 725, 99 Am. Dec. 486. The act of piling the lumber in a place where it was not lawful to pile it, to be continued, was of itself an act of negligence by the party to whom the lumber belonged, and it was equally neglectful on the part of the municipal corporation in allowing it to remain where it was so illegally placed. This is negligence, defined as being the failure to observe, for the protection of other persons, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other persons suffer injury. Cooley, Torts, p. 630. Both defendants are therefore in a position to be made liable to a party suffering an injury in consequence of their wrongful acts and omissions.

2. The defense to the action is attempted to be maintained principally upon the supposed failure of the evidence to make apparent the cause of the falling of the timber upon the children. It is insisted that, in the absence of such evidence, and that because there was no evidence to show that the falling of the timber could be fairly attributed to the negligence of the defendants, there could be no recovery against them for the injury to the plaintiff. It is contended that the lumber was carefully piled or stacked, and that care had been taken to make it secure against possible accident. But, in the nature of things, there must have been an adequate cause for the falling of the timber, and the piling of the timber made it subject to the operation of that cause. The court instructed the jury that if the plaintiff was

guilty of negligence in causing the timber to fall on her, then she could not recover. But there is no evidence to show that she was instrumental in causing the timber to fall, other than the fact that she and the other two children were seated on the adjoining pile of the lumber. The defendants, by placing the lumber and allowing it to remain as they did, necessarily incurred the risk of any mischief that might result therefrom. It was piled in the street, on public ground, where the public had a right to be, and it was tempting to children to play on it, or, it might be, to sit on it; and if, by indulging their natural impulses as children, they were on the timber, and it fell from some jar or disturbance received, it would be difficult to say that there was any such negligence on their part as would defeat a recovery for an injury received by one of them. The case would seem to fall very clearly within the principle of *Lynch* v. *Nurdin,* 1 Q. B. 29. That case is a leading one, and it has been often cited and followed in subsequent cases.

That was a case where the defendant negligently left his horse and cart unattended in the street. The plaintiff, a child seven years old, got upon the cart in play, and another child incautiously led the horse on, and the plaintiff fell off, and one of the wheels of the cart ran over his leg and broke it. An action on the case was brought, and, after much argument and consideration, it was held that the defendant was liable, though the plaintiff was technically a trespasser and contributed to the mischief by his own act; and that it was properly left to the jury to determine whether the defendant's conduct was negligent, and that negligence caused the injury.

The unanimous opinion of the Queen's bench was delivered by Lord Denman, Chief Justice, and after stating the facts, among other things, he said: "It is urged that the mischief was not produced by the mere negligence of the servant, as asserted in the declaration, but at most by that negligence in combination with two other active causes,—the advance of the horse in consequence of his being excited by the other boy, and the plaintiff's improper conduct in mounting the cart and so committing a trespass on the defendant's chattel. On the former of these two causes no great

stress was laid, and I do not apprehend that it can be necessary to dwell at any length [upon it.] For if I am guilty of negligence in leaving anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first  *  *  *  But in the present case an additional fact appears. The plaintiff himself has done wrong; he had no right to enter the cart, and, abstaining from doing so, would have escaped the mischief. Certainly he was a co-operating cause of his own misfortunes, by doing an unlawful act; and the question arises, whether that fact alone must deprive the child of his remedy. The legal proposition that one who has by his own negligence contributed to the injury of which he complains cannot maintain his action against another in respect of it has received some qualifications. Indeed, Lord Ellenborough's doctrine in *Butterfield* v. *Forrester,* 11 East, 60, which has been generally adopted since, would not set up the want of superior degree of skill or care as a bar to the claim for redress: Ordinary care must mean that degree of care which may reasonably be expected from a person in the plaintiff's situation; and this would evidently be very small, indeed, in so young a child." The learned chief justice then proceeded to examine the cases upon the subject, and in conclusion he said: "But the question remains, Can the plaintiff then, consistently with the authorities, maintain his action, having been at least equally in fault? The answer is that, supposing that fact ascertained by the jury, but to this extent, that he merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot be permitted to avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child with yielding to the temptation. He has been the real and only cause of the mischief. He has been deficient in ordinary care; the child, acting without prudence or thought, has, however, shown these qualities in as great a degree as he could be expected to

possess them.   His misconduct bears no proportion to that of
the defendant, which produced it."

This case of *Lynch* v. *Nurdin* has been recently cited and
quoted from with approval by the Supreme Court of the United
States, in the case of *Union P. R. Co.* v. *McDonald,* 152 U. S. 262,
38 L. ed. 434, 14 Sup. Ct. Rep. 619.  In that case a railroad com-
pany which operated a coal mine near one of its stations in Colo-
rado was in the habit of depositing the slack on an open lot be-
tween the mine and the station in such quantities that the slack
took fire and was in a permanent state of combustion.   This
fact had been well known for a long time to the employees and
servants of the company, but no fence was erected around the
open pit, and no efforts were made to warn people of the danger.
In this state of things, a lad twelve years of age, and his mother,
arrived by train at the station, and stopped there.  Neither had
any knowledge of the condition of the slack, which, on its sur-
face, presented no sign of danger.  Something having alarmed the
boy, he ran towards the slack pit, fell on and into it, and was
badly burned.   Suit was brought to recover damages from the
railroad company for the injuries thus sustained, and it was
held that the company was guilty of negligence in its failure to
fence the slack; and that the lad was not a trespasser under the
circumstances, and had not been guilty of contributory negli-
gence.

In that case the breach of duty that constituted the negligence
was the failure of the company to fence in the slack pit, as re-
quired by law; while in the present case the breach of duty was
in piling and keeping the lumber in the public street by the de-
fendant Smith, and the allowing and suffering the same to re-
main there by the municipal authorities, contrary to law.

In the case of the *Union P. R. Co.* v. *McDonald,* the case of
*Lynch* v. *Nurdin* is extensively quoted from and approved; and
the case of *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 21 L.
ed. 745, is also quoted and relied upon, in the elaborate opinion
of the court, by Mr. Justice Harlan.   The case of *Sioux City &
P. R. Co.* v. *Stout* is a very apposite and strong authority in the
case before us.   In that case the question was whether the rail-

road company was liable for an injury received by an infant, while upon its premises, from idle curiosity, or for purpose of amusement, if such injury was, under the circumstances, attributable to the negligence of the company.   The defendant there rested its defense exclusively upon the ground that the company was not negligent, but insisted that the injury to the plaintiff was accidental or had been brought upon himself by his own act.

There it appeared that the railroad company owned and used for its roadbed and depot grounds a tract of enclosed land, in the town of Blair, Nebraska, upon which the company had its depot house, and a quarter of a mile from which was a turntable belonging to it.   The plaintiff, a boy of little over six years of age, together with one or two other boys, went to the company's depot, about a half a mile distant, without any definite purpose in view.   Upon arriving there, the boys, at the suggestion of one of them, concluded to go to the turntable, and proceeded, traveling the track of the railroad.   When they reached the turntable, which was not attended or guarded, nor at that time fastened or locked, but could be easily revolved on its axis, two of the boys commenced to turn it.   The plaintiff's foot, while he was attempting to get on it, was caught between the end of the rail on the turntable, as it revolved, and the end of the iron rail on the main track, whereby it was badly cut and crushed, resulting in a serious and permanent injury.   It appeared in evidence by one of the employees of the company that he had previously seen boys playing at the turntable, but the fact was not communicated to the officers of the company having charge of the turntable. The plaintiff, however, had never been at the turntable before.

The case was tried before Judge Dillon, then circuit judge, and he submitted the case to the jury upon a very carefully prepared charge, which was fully approved by the Supreme Court on writ of error to that tribunal.   In the opinion of the Supreme Court it was said:   "That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the injury which actually occurred to the plaintiff.   There was the same liability to injury to him, and no greater, that existed with

reference to all children. When the jury learned from the evidence that he had suffered a serious injury by his foot being caught between the fixed rail of the roadbed and the turning rail of the table, they were justified in believing that there was a probability of the occurrence of such accidents."

And so in the present case, the fact that the pile of timber did fall and inflict the injury that is complained of was proof to justify the inference that the pile of timber was liable to fall, and that there was a probability of the occurrence of such accidents as did in fact occur. Thus, by piling the lumber in the street and allowing it to remain there, the defendants must, as a consequence of their illegal acts, be held to have known to be possible, and therefore chargeable with, the injury resulting therefrom.

It is quite apparent from the authorities to which we have referred, that the court below in the instructions given to the jury, by the qualification added to the prayer granted at the request of the plaintiff, and the granting of the second prayer offered by the defendant, was more liberal to the defendants than the law strictly required. The rule as to contributory negligence would appear to have been applied with more strictness against the plaintiff in this case than was applied in either the case of *Lynch* v. *Nurdin*, or *Sioux City & P. R. Co.* v. *Stout*. The case was fully and fairly embraced by the instructions given, and we find no error in the rulings of the court in respect of the prayers that were rejected. We think the judgment should be affirmed; and it is so ordered.                    *Judgment affirmed.*