# HAYNES v. OREGON-WASHINGTON R. & N. CO.*

(150 Pac. 286.)

**Railroads—Injuries to Trespasser—"Negligence."**

1. Plaintiff, a minor, was injured by the fall of a bank of earth forming a cave near defendant's right of way in a cut formed by the right of way. Plaintiff had taken refuge in the cave to escape a shower, and after the shower remained there with some companions at play. The wires of the railroad fence in the vicinity were down, and defendant was chargeable with notice of trespass of boys on the track, and might, by reasonable diligence, have acquired knowledge of the cave, which was attractive to children. *Held*, that negligence being an infraction of a legal obligation due from one person to another, and defendant owing no duty to plaintiff, who was a mere trespasser, except not to negligently or recklessly injure him, defendant was not liable.

> [As to liability of land owner for injury to trespassing child on account of unguarded pond, pool, well, etc., see note in Ann. Cas. 1913A, 1032.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2. Statement by MR. CHIEF JUSTICE MOORE.

This is an action by James O. Haynes, a minor, by O. S. Haynes, his father and guardian *ad litem,* against the Oregon-Washington Railroad & Navigation Company, a corporation, to recover damages for a personal injury. The facts are that a part of the defendant's railway, extending northerly about a half mile from St. Johns, Oregon, is cut through a hill, which inclines westward toward the Willamette River. The top of the east slope of the passage, at the place in question, is about 37 feet above the track. From the surface of the bank at that place, the excavation is

---

*As to the doctrine of "attractive nuisance," see notes in 19 L. R. A. (N. S.) 1094; 47 L. R. A. (N. S.) 1101; 50 L. R. A. (N. S.) 1147.

As to duty of property owner to trespassing children, see note in 32 L. R. A. (N. S.) 559.    REPORTER.

made through clay about 8 feet, the remainder of the depth being through sand. Wires strung on wooden posts, set on each slope 25 feet from the middle of the railway track and parallel therewith, form right of way fences. No public highway intersects or approaches the track at the place mentioned. Prior to November 23, 1913, a cave of about a cubic yard had been made in the sand on the east slope, immediately below the line of clay. On that day the plaintiff, then 12 years old, and three other boys, returning across lots from the river, went upon the railway track, and, in order to escape a shower, climbed up to and entered the cave. After remaining there a few moments, one of the boys left to attack with clods his companions, who were playing the hole was a gold mine and he a robber, when the bank fell, entombing the occupants of the cave and injuring the plaintiff. The complaint charges, in effect, that the defendant was negligent in failing to maintain on its right of way fences to protect children, and recklessly allowed the bank to become and remain unguarded; that in excavating the earth, crevices were made, and the bank of the cut was and for a long time had been dangerous; that the bank was carelessly allowed to be a place attractive to children of tender years who, without warning, resorted to it, of which facts the defendant had knowledge. The answer denies the material averments of the complaint, and for a further defense alleges that, without the defendant's knowledge and in violation of its rules, the plaintiff entered upon the railway track through the right of way fences, which were in good repair, and dug a hole in the bank, thereby removing a part of the support of some earth, causing it to fall upon him; and that whatever injury he sustained resulted

from his negligence in that particular. The reply put in issue the allegations of new matter in the answer, and, a trial of the cause having resulted in a judgment for $500 against the defendant, it appeals.

REVERSED AND DISMISSED.    REHEARING DENIED.

For appellant there was a brief over the names of *Mr. W. A. Robbins, Mr. Arthur C. Spencer, Mr. John P. Hannon* and *Mr. Charles E. Cochran,* with an oral argument by *Mr. Robbins.*

For respondent there was a brief with oral arguments by *Mr. W. A. Burke* and *Mr. J. C. Simmons.*

Opinion by MR. CHIEF JUSTICE MOORE.

It is maintained that an error was committed in refusing to direct a verdict for the defendant, as requested by its counsel, to which action of the court an exception was taken. It is argued that the defendant, a land owner, was not liable to a trespasser for an unintentional injury, or for any failure properly to fence its right of way, or to guard the banks of its cut, which by lapse of time and the effect of the elements had become steep or even precipitous, or in permitting a hole to be made in a bank of earth to which cave children could resort to escape rain, or remain to play. It is not averred in the answer that the fences referred to were put up on the boundaries of the right of way. W. D. Scisinger, a section foreman employed by the defendant, testified that the fences were supposed to mark such boundary. St. Clair Thomas, a civil engineer in defendant's service, as its witness, in answer to the question, "Does that cave come within the right of way?" replied, "No." In referring to the east bank of the cut, and alluding

to a cross-section plan which he had prepared, this witness stated upon oath: "Erosion and the elements have caused it to slough off here, to a perpendicular condition, as indicated by this drawing." No deed or other writing was offered in evidence to establish the width of the right of way at the place where the plaintiff was injured, nor was any testimony received tending to show that the cave was made by the defendant, as alleged in the complaint. In the absence of such proof, the sworn declaration of Mr. Thomas must be accepted as true, and the facts established that the cave was not on the defendant's real property, nor made by it.

Frank Haynes, the plaintiff's brother, who was with him when he was hurt, in referring to the fences along the right of way at that time, said they were down. Robert Roskowsky, who assisted in rescuing the plaintiff after the landslide, referring to the fences near the railway track, testified that "the wires were down."

It also appears from the testimony of plaintiff's witnesses that boys, during school vacation and holidays, customarily passed along and played on the railway track at the place where the slide occurred, and that the defendant's employees in charge of this part of its roadbed frequently saw such youths on these premises. This testimony is corroborated by the defendant's servants, who stated upon oath that though boys had been ordered to depart from the track, they refused to comply with the command. The defendant was therefore chargeable with notice of the trespass of the boys upon its railway track, and by the exercise of reasonable diligence, knowledge of the existence of the case might have been acquired. The cut was made through the hill by the defendant in grading its roadbed. If in performing that work the incline ex-

tended beyond the line of the right of way, and there was a failure to give the bank sufficient slope, in consequence of which a slide of earth occurred that might reasonably have been guarded against, liability would attach in favor of passengers and employees, or those persons to whom a duty was owing to protect them from injury: *Scott* v. *Astoria R. R. Co.*, 43 Or. 26, (72 Pac. 594, 99 Am. St. Rep. 710, 62 L. R. A. 543).

That the cave was alluring to boys must be conceded by every person whose curiousity has ever been excited by a novelty. It is not strange, then, that the plaintiff and his companions were attracted by the inviting shelter from the rain which the cave afforded, and, having gained the retreat by climbing the bank of the cut, it was not unusual that they should remain in the cave to play after the storm had abated. The writer believes that as the hole in the bank was not made or maintained for use in any manner by the defendant, and as it was obliged to guard the banks of the cut so as to protect its passengers and employees from danger of slides of earth, the plaintiff, though a trespasser, having been tacitly invited to the hole by its allurement, was also entitled to recover damages for the injury suffered by reason of the negligence of the defendant in allowing the cave to remain as an attraction to an inquisitive boy. A majority of the court, however, in the case of *Riggle* v. *Lens,* 71 Or. 125 (142 Pac. 346, L. R. A. 1915A, 150), reached a different conclusion, and the rule there recognized is controlling herein. In that case it was held that the owner of a millrace that was not protected by fence or guard was not liable for the death of a child who, trespassing upon premises and playing upon the banks of the artificial watercourse, fell in and was drowned, though the millrace was occasionally resorted to by

children for amusement. The decision rendered in that case is contrary to what is known as "The Turntable Cases." The first of that class in the Supreme Court of the United States is the case of *Railroad Co.* v. *Stout,* 17 Wall. 657 (21 L. Ed. 745), decided in the year 1873, where it was held that a child six years old was entitled to recover the damages suffered by the hurt. In deciding that case Mr. Justice Hunt, after adverting to the rule adopted in *Lynch* v. *Nurdin,* I Adol. & E. (N. S.) 29, the first case holding that a child who was a trespasser could recover for an injury caused by the negligence of another, and to similar decisions in this country, observes:

"There are no doubt cases in which the contrary rule is laid down. But we conceive the rule to be this: That while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts."

In assigning a reason for the rule thus declared, Mr. Justice Bartholomew in *O'Leary* v. *Brooks Elevator Co.,* 7 N. D. 554 (75 N. W. 919, 41 L. R. A. 677, 680), referring to some of the cases announcing the legal principle, remarks:

"They have for their foundation the assumption that a defendant land owner must know that children will follow their childish instincts and inclinations, and that they are without capacity to clearly discriminate between things that are dangerous and things that are not dangerous; and, therefore, if he leave upon his premises a dangerous piece of machinery unguarded and fully exposed, and in a position where it will probably be seen by children, and of a character that would naturally attract and entice children, he

77 Or.—16

must anticipate that children will go around and upon it; and he is therefore bound to use ordinary care to protect these unconscious trespassers from being unnecessarily injured by such dangerous machinery."

That this legal principle has been recognized by many able courts will be seen from an examination of the notes collating the cases referred to in the following text-books: 29 Am. & Eng. Ency. Law (2 ed.), 32; 29 Cyc. 463. An author in commenting upon the maxim, "*Sic utere tuo ut alienum non laedas,*" gives utterance as follows:

"It is said that one owes no duty to an intruder or trespasser except not intentionally to harm him. Is this true as to a young child known to be in danger of being injured? Is there not an active duty owing to protect the helpless child from known danger on one's own land? * * As to the mature trespasser no duty of care is owing. The land owner, however, must not become an active aggressor, by exposing dangerous machinery unfastened where it will probably attract children, but as to the child, known to be exposed to danger by one's own act, the law of humanity, and therefore the common law, demands care. The real question is not whether a duty is owing to a child which under the same circumstances would not be owing to a grown person, but, putting the case personally, whether, knowing that an act of yours is liable to induce anyone to expose himself to danger, it is not your duty to anticipate such action on his part and use care to avoid injuring him. If an act you are contemplating, right in itself, will likely cause some one to expose himself to danger which he does not anticipate, it is your duty to take care that such exposure does not prove injurious to him. In determining the question whether the act will induce such exposure, it is your duty to consider the motives and impulses that induce action by others who are likely to be influenced by your act. If men may be misled in their judgment by your act, you must take measures to warn them or to

avoid injuring them by proper care.   If children from their known childish instincts and curiosity may be led into danger, such care is due them also'': Ray, Negligence of Imposed Duties, Personal, p. 32.

These extensive quotations have been made to illustrate the writer's view of the rule which should determine the question involved.   A majority of the court, as then composed, having reached a different conclusion in the case of *Riggle* v. *Lens,* 71 Or. 125, (142 Pac. 346, L. R. A. 1915A, 150), an attempt will be made to express the opinion thus entertained.   In referring to the ruling in *Railroad Co.* v. *Stout,* 17 Wall. 657 (21 L. Ed. 745), a text-writer remarks:

''This decision has been followed in many other cases, in some of which the doctrine therein announced was stretched to its utmost limits in its application to the facts.   But some of the ablest courts of the land, in recent decisions, have refused to follow it, and in this we believe they are justified by reason, if not by the weight of authority'': Elliott, Railroads (2 ed.), § 1259.

This expression of that distinguished jurist and author is not in conflict with the decision rendered by this court in *Macdonald* v. *O'Reilly,* 45 Or. 589 (78 Pac. 753), where, a little child having been killed while playing on poles piled in the street, the defendant was held liable for the injury thus caused by his negligence. The timbers having been piled in a public street, the child was not a trespasser in going to and playing on the nuisance so created.   In *Hill* v. *Tualatin Academy,* 61 Or. 190 (121 Pac. 901), a little boy was injured by the discharge of a gopher gun, set in a hole on real property of the defendant, and it was held the academy was liable for the injury sustained.   In that case, however, the child and his mother were not trespassers

upon the premises, but licensees at the time he was hurt. In speaking of liability for injury to trespassing young children, a text-writer says:

"In actions of injuries to children, as in other cases, there can be no recovery unless the defendant has been guilty of a breach of duty": Elliott, Railroads (2 ed.), § 1259.

Negligence is an infraction of a legal obligation due from one person to another, and where there is no duty there can be no negligence: *Hallihan* v. *Hannibal & St. J. R. Co.*, 71 Mo. 113, 116; *Barney* v. *Hannibal & St. J. R. Co.*, 126 Mo. 372, 392 (28 S. W. 1069, 26 L. R. A. 847). The plaintiff herein was a trespasser upon premises the care of which devolved upon the defendant, and it owed to him no duty except that of not inflicting any wanton or reckless injury.

It will be remembered that the wire fences, put up to mark the boundaries of the right of way, were down at the places where the plaintiff and his companions entered upon the railway track and left it to reach the cave. Fences are erected and maintained in such places to keep domestic animals off the roadbed, thereby avoiding the possibility of a collision with them, and thus passengers and employees may escape liability to injury from a probably resulting wreck. No obligation is imposed upon a railway company to fence its track against a boy who is 12 years old, so that as to him the failure of the defendant to keep the wire fences in proper repair cannot be assigned as a ground of negligence.

To the plaintiff and his associates the cave was probably alluring. Any boy of average intelligence and of plaintiff's age when he was hurt, whose spirit of adventure is not awakened, and whose desire to

overcome obstacles is not aroused by observing novel objects in reasonably accessible places, is scarcely normal. His disposition to investigate unfamiliar things is gratified by their examination. All such objects are to his immature mind new worlds to be discovered and explored. This natural tendency, however, does not impose upon the owner of real property which is not intersected by, bordered upon, or located near a highway the duty to mark as "dangerous" a cave which is or might become hazardous.

The maxim, "*Sic utere tuo ut alienum non laedas,*" is a concise statement of a legal principle which is justly applicable to a land owner when a deleterious use of his premises injuriously affects persons or property beyond his borders. He may operate thereon a boiler-shop, an abattoir, a soap or a glue factory, a smelter, or any other noisy or noxious business, and if the turbulence or the unhealthy odors or the poisonous gases do not extend beyond the boundaries of his premises, no person has sustained any actionable injury in consequence thereof. So long as he prevents the escape of these objectionable things and destructive elements from within his own confines he is under no obligation to trespassers to give warning of such dangers or nuisances; and he may make of his land any use that in his judgment best conduces to his ideas of pleasure or expectation of profit.

The writer has tried carefully to express the views of his Associates as evidenced by the opinion in *Riggle* v. *Lens,* 71 Or. 125 (142 Pac. 346, L. R. A. 1915A, 150), and while he does not concur in the conclusion here reached, the declaration must be made that an error was committed in refusing to direct a verdict for the defendant.

It follows that the judgment is reversed and the action dismissed.     REVERSED.     REHEARING DENIED.

MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.

MR. JUSTICE HARRIS delivered the following dissenting opinion.

This court held in *Hoover* v. *King*, 43 Or. 281 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L. R. A. 790), that:

"A judgment dismissing a complaint in an action at law is a proceeding unknown to the statute," and, "An action at law, however, is disposed of either by a judgment in favor of the plaintiff or defendant, or one of nonsuit."

The doctrine was reaffirmed in *Mulkey* v. *Day*, 49 Or. 312 (89 Pac. 957). Applying the rule established by precedent, the instant case should terminate in a judgment for defendant and not in a dismissal.