## KRAMER v. THE SOUTHERN RAILWAY COMPANY.

(December 19, 1900.)

*Negligence—Infant—Railroads—Cross-ties—Instructions—
Contributory Negligence.*

> Where a railroad company piles its cross-ties on an unused
> portion of a public street and in a dangerous manner, and
> the company has knowledge that it is the custom of children
> to play upon them, it will be held negligent where a child,
> too young to be bound by the rules of contributory negli-
> gence, is injured by the ties.

FAIRCLOTH, C. J., and FURCHES, J., dissenting.

CIVIL ACTION by Sarah Kramer, administratrix of Hugo
Kramer, against the Southern Railway Company, heard by
Judge *T .J. Shaw,* and a jury, at Special (January) Term,
1900, of McDOWELL Superior Court. From judgment for
defendant, the plaintiff appealed, and the judgment was af-
firmed.

For the *per curiam* order, see 126 N. C., 1152. On re-
hearing, the petition was allowed, and a new trial ordered.

*E. J. Justice,* for the petitioner.
*G. F. Bason, A. B. Andrews, Jr.,* and *F. H. Busbee,* in
opposition.

MONTGOMERY, J. This case was disposed of at the last
term of this Court by a *per curiam* order affirming the judg-
ment below, which was in favor of the defendant. A peti-
tion by the plaintiff to rehear was allowed, and the case is
again before us for our reconsideration. The action was
brought by the mother of the child, as his administratrix,
under sec. 1498 of The Code, to recover compensation for
the pecuniary injury resulting from the death. The plain-

tiff in her complaint alleged that the defendant owed the
public and her intestate the duty of keeping the street and
its road free from obstructions, dangerous or unsafe, and
which might injure the public or any of its members, and
that in violation of this duty it placed dangerous obstructions
in the street, to-wit, a large number of railroad cross-ties,
which were so carelessly piled as that on the 27th day of
July they fell on the intestate of the plaintiff, a child of 9
years of age, and by which he received injuries from which
he died on the 17th of August, 1898. The facts, so far as
they are necessary to be stated for the purposes of this ap-
peal, are these: On Garden street, in the town of Marion,
where the defendant's railroad crosses the street, the de-
fendant had piled a lot of cross-ties, not in the manner called
"cribbing," but straight and in rows, one on the top of the
other. The street at that point was originally laid out to be
60 feet wide, but only about 14 feet of it had ever been, or
could have been, used in its then present condition as a pub-
lic highway for vehicles, and there were no sidewalks for
pedestrians. In the summer of 1898, some little boys had a
habit of playing on the cross-ties, and while so engaged in
play, on the 27th day of July, one of them, Hugo Kramer,
the plaintiff's intestate, 9 years old, that he might get a bet-
ter of a passing train, undertook to climb up on the cross-
ties, and in so doing, pulled some of them over, and upon
him, by means of which he was so badly hurt, that in a few
weeks he died. The gravamen of the complaint is the de-
fendant's negligence growing out of its obstruction of a
public street.

If the cross-ties had been piled upon the defendant's own
premises instead of in the street, and the defendant had had
no actual knowledge that the children were in the habit of
playing on the ties, the law would have imposed no duty

upon the defendant to look out for their safety by having the ties piled with a view to that end. *Railway Co. v. Edwards,* 90 Tex., 65. The principle announced in the Turntable case (*Railway Co. v. Stout,* 17. Wall., 657, and others), would not apply if the ties had been carelessly piled on the defendant's premises. The Turntable decisions are necessarily based either on the idea that such machinery has such peculiar attractions for children as objects of play, that, when left unlocked, there is an implied invitation to use them, or, when not properly guarded, it is so obviously dangerous to children as to call for diligence in the owner to take precautions against the dangers. Those cases are exceptions to the general doctrine, and went to the very limit of the law. Mere attractiveness of premises to children will not bring a case within that exceptional doctrine. Indeed, the plaintiff's counsel, in his argument here, stated that he did not contend for the application to this case of the principle laid down in the Turntable Cases. His argument was mainly addressed to the discussion of three of the plaintiff's exceptions—two, the first and the fifth, bearing on the Court's instructions upon the obstructions of the public street or highway; and the third, on the negligence of the defendant, as connected with, and dependent upon, the defendant's knowledge of the habit of the children of playing on the cross-ties.

In the portions of his Honor's charge to which exceptions one and five were directed, the jury were instructed, in substance, that there was no obstruction of the street, unless the cross-ties were in that part of the street which was used by the public, and that if the ties were upon that part of the street which was not used by the public, and could not be used, there was no obstruction of the highway; and, further, that the defendant company was guilty of a wrongful act in

allowing it to remain there; but, nothing else appearing, the only remedy for that wrongful act, would be indictment by the grand jury, and the defendant be punished in a criminal action for obstructing the public highway; "and a private individual would have no right to maintain an action against the railroad company for obstructing the street, unless that private individual was injured—received special injuries—on account of the pile of cross-ties being there, an obstruction to the highway, and while the party was using the highway as he had a right to do." We see no error in that instruction. If the whole—all parts—of the street had been in a condition to be traveled and used by the public, and by habit and custom, the public had used only a certain portion of it, then the instruction would have been wrong. But that is not the case here. There was evidence that only that portion which was used could have been used; the other part being unfit for use. The piling of the ties on the unused part of the street might have been without leave of the town, and the defendant might have been a trespasser, but, under the facts of this case, it had not obstructed the street.

The Court further instructed the jury that, although they might find that the pile of cross-ties was an obstruction, there in the street, the plaintiff's cause of action was not founded upon that primarily, and that, before they could say that the intestate's injury and death were caused by the negligence of the defendant, they should inquire whether or not the defendant knew that the pile of cross-ties in the street was a common resort of little boys of tender years in that neighborhood to play, and the burden was on the plaintiff to show that the railroad company knew that fact, and that, if the defendant did not know it, then they should answer the issue as to the defendant's negligence, "No." That was a correct instruction, and was consistent with the one just discussed.

But his Honor further told the jury: "If you find that it [the pile of cross-ties] was not an obstruction to the highway, then it would be your duty to answer this issue [as to the defendant's negligence,] 'No.'" In this instruction there is error. The pile of cross-ties was not on the defendant's premises. It was on a public street in the town of Marion, and, even though the defendant might have been tacitly permitted to use the street for the purpose of piling the ties, yet the plaintiff's intestate was not a trespasser. If he was too young to be bound by any rule as to contributory negligence, and had a habit of playing, with other boys, on the cross-ties, with the knowledge of the defendant, and without the defendant's attempting to prevent such sport or to take precautions against injury to the children, then the defendant was negligent. In such a case the defendant's negligence would not consist in piling the cross-ties in the street, but it would consist in its failure to guard against injury to the children, after it had learned of their habit of playing on the ties, and its failing to provide against their injury; and this is particularly true as the ties were not on the defendant's property, and the plaintiff's intestate not a trespasser. The petition is allowed, and a new trial is ordered.

New trial.

FAIRCLOTH, C. J., dissents.

FURCHES, J. (dissenting). This is an action for damages under the statute for the negligent killing of plaintiff's intestate, Hugo Kramer, a boy 9 years of age. The facts, briefly stated, are, that in the year 1896, one, Grayson Lewis, the owner of a lot of cross-ties, hauled and piled them on an unused part of Garden street, within ten or twelve feet of the defendant's railroad track. In the latter part of the year 1897, Lewis sold them to one Dysart, and in April,.

1898, Dysart sold them to defendant railroad company. On the 17th of August, 1898, the intestate of plaintiff and other boys of about the same size and age were playing on this pile of cross-ties, when some of the ties fell upon the intestate, and so injured him, that he died in a few weeks. The ties were piled lengthwise, not crossed, or "cribbed," as it is called, and, being so piled, it is alleged, were dangerous for boys to play on. But defendant did not place them where they were, nor did it pile them there, but they were just where Lewis piled them in 1896, and just as they were when defendant bought them. Upon the trial below, the verdict and judgment were against the plaintiff, and she appealed to this Court, and at the last term, her appeal was considered, and the judgment appealed from was affirmed. It is now before us upon a petition to rehear.

It has been held by this Court that the decision at the former hearing, on an application to rehear, is a precedent. But, if so, how far it should influence the Court, or what weight should be given to it, we will not undertake to say. But the general rule, as we understand it, is, that it devolves upon the appealing party to show substantial error which did or might have injured him, or the judgment appealed from will be affirmed. It may therefore be, and we will not say that there is, no error in the charge of the Court. But, if there is, upon a careful examination, we are unable to see that plaintiff is injured, or that she might have been injured, by any such error, if there was such error.

To make the defendant liable, it must be shown that defendant has been guilty of doing something wrong, or has been guilty of negligence which was the proximate cause of the intestate's injury and death. And it devolves upon the plaintiff to show this. To do this, the plaintiff shows that in April, 1898, the defendant bought a lot of cross-ties

that had been piled there two years before it bought them; that these boys had been in the habit of playing on them for months before defendant bought them without being injured, but that by the accidental falling of some of these ties, some two or three months after defendant bought them, the intestate was injured and killed. The plaintiff admitted on the argument, that the "Turntable Cases," as they are called (17 Wall., 657), did not apply, as those cases were put upon the ground that a turntable was specially attractive to a child, and exceedingly dangerous; that the principle involved in those cases had no application to this case, as a pile of cross-ties was not specially attractive, nor was it, as a general rule, dangerous.

But, while the plaintiff properly conceded that the Turntable Cases did not apply, it was contended that defendant was liable upon another line of authorities, where it is held that if a lumber dealer piles wood or lumber on his own premises, though carelessly piled, and children play upon it, and are injured by its falling, the owner of the lumber is not liable in damages; but, if he piles his lumber on the land of some one else, he is a trespasser, and, if the lumber falls and injures the child, he is liable in damages. If there is such a distinction, it is upon the merest technicality. But suppose we admit this doctrine to be correct, and try the case by this rule, and the defendant is not liable. The defendant is compelled to have cross-ties to repair and keep its road in order. It can not pile them on its track or road-bed. That would be to obstruct the running of its trains, and stop the transportation of passengers and the movement of freight. It is, therefore, compelled to put them on its right-of-way. And we know, as a matter of law (Laws 1854-55, chap. 228), that the defendant has an easement of 100 feet on each side of its road-bed for just such purposes as this.

Suppose these cross-ties had been piled on some other part of this easement that had not been located as a public road or street; could it be contended that it had no right to do so, and that it was a trespasser?

We must suppose that plaintiff would admit that defendant has the right to pile cross-ties on its easement not occupied by anyone. But plaintiff says, if this is so, the defendant had no right to pile its cross-ties in the public road, and in so doing it was a trespasser, and therefore liable. Assuming, for the present, that they were piled within less than one hundred feet of defendant's road-bed, which we will presently show to be the fact from plaintiff's testimony, this is the question: Was the defendant a trespasser in allowing these cross-ties to remain where they were when it bought them?

The public road or street having been located over the ground where they were piled did not take the defendant's easement from it, except so far as the public use demanded it as a public highway, and defendant had the same right to use it as public highway that anyone else had. It could not, therefore, be a trespasser by using the road, though it may have used it improperly. If anyone using the street as a public highway had been injured on account of the cross-ties being in the public street he might have been entitled to damages. But his action would not have been against the defendant as a trespasser, but for unlawfully obstructing the public highway, whereby and by reason of such obstruction he was injured. The plaintiff cited *Dillon v. City of Raleigh,* 124 N. C., 184, as authority for her position; but upon examination it will be found that it does not sustain her, but sustains the position we have taken. That was not an action against the city as a trespasser, but for allowing its streets to be and remain obstructed, and by reason of said

obstruction the plaintiff was injured.    Suppose the plaintiff
in *Dillon v. City of Raleigh* had gone upon the bridge over
the railroad, where the obstructions were in the street below,
and had fallen and been injured; would the plaintiff con-
tend that the city was guilty of a trespass, and therefore
liable in damages?    But we have said that the defendant's
rights, as the owner of the easement, were only suspended so
far as the traveling public demanded their suspension.    Here
was a public street located fifty or sixty feet wide, but it had
only been open for public use for a space of twelve or fifteen
feet wide; the other thirty-five or forty feet had not been
open for public use, and was not used by the public as a
highway.    Then, can it be possible that defendant's right
to use it for the very purpose for which it was granted to
defendant was suspended, and the defendant became a tres-
passer by using it?    This is the turning point in the case,
according to plaintiff's view, as the attorney of plaintiff in
his brief, discussing this case in connection with the Turn-
table Cases, says:    "If a railroad company puts a turntable
and a pile of cross-ties on its own land, and a boy is injured
on the pile of cross-ties, and another boy is injured on the
turntable, then the distinction the Court made might save
the company from liability as to the boy who was injured
on the cross-ties, and it might be said that as to him the com-
pany had done no wrong and neglected no duty."

So it seems to us that the only thing remaining to be
shown is, that the cross-ties were piled upon the company's
easement, which, as we have said, the plaintiff's evidence
shows to be so.    D. H. Hudgins, a witness for plaintiff, on
cross-examination, testified: "Question. The railroad crossed
Garden street near where this pile of cross-ties lay? Answer.
Yes."    Same witness:    "Question. Do you know those cross-
ties were piled east of the east end of the crossing?    Answer.

Just about on a line with it." Same witness: "Question. And in order to run into that pile of cross-ties a man would have to run into a ditch? Answer. No; he would have to cross the railroad track, and then go on, say ten or twelve feet, and then he would be opposite the end of the cross-ties." The evidence is uncontradicted that the cross-ties were piled on land located as a street, but had never been worked, and was not, and had never been, used by the public as a street. The evidence was all introduced by the plaintiff, and we are of the opinion that, taking every word of it to be true, the plaintiff failed to make a case, and that defendant's motion at the close of the evidence for judgment of non-suit should have been granted. The petition to re-hear should be dismissed.