## SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD

*v.*

### BERTHA MUTH et al.

[Decided March 5th, 1920.]

1. When a fraternal organization pays the proceeds of an insurance policy into court on a bill of interpleader, it waives its right to resist the claim of the named beneficiary on the ground that she was not one of those whom the member was authorized by the constitution and by-laws of the organization to have designated as his beneficiary.

2. Such objection could be raised only by the organization, and would not entitle the members' heirs to the proceeds of the insurance policy upon payment thereof into court by the organization.

3. A beneficiary has an insurable interest in the life of an insured if the continuance of the life of the insured would be to the beneficiary's advantage or benefit, or if the insured be under some obligation to render the beneficiary care and assistance in time of need.

4. In this action between a named beneficiary who was not a member of one of the classes from which a beneficiary might be chosen, according to the constitution and by-laws of an organization, on the one hand, and the beneficiary's sisters on the other—*Held*, that the proceeds should be awarded to the named beneficiary, in view of the equities of the case.

On bill of interpleader. On pleadings and proofs.

Mr. *Richard Stockton,* for the defendant Bertha Muth.

Mr. *Samuel Schleimer,* for the defendants Jessie L. Henderson and others.

FIELDER, V. C.

Some time prior to March, 1918, the exact date not appearing in the pleadings or proofs, the Sovereign Camp of the Woodmen of the World, a Nebraska corporation, issued its benefit certificate on the life of Robert McQueen, one of its

members, under which certificate participation in the society's beneficiary fund was made payable to the wife of said member, to the extent of $1,000. Upon the death of Mrs. McQueen a new certificate in the same amount, dated April 13th, 1918, was issued by the society at the member's request, payable to Bertha Muth, who was designated in the certificate as a dependent of the assured. Robert McQueen died January 12th, 1919, leaving Mrs. Muth surviving him and also, as his only blood relatives, three sisters of middle age.

Upon McQueen's death Mrs. Muth claimed payment on the certificate and instituted suit thereon against the society and it being represented to the society that she was the step-daughter of McQueen's deceased wife and in no way related to or dependent on him, she therefore did not come within the persons named in the society's constitution and by-laws as one to whom its benefit certificate could be made payable, and the sisters of Robert McQueen also making claim to the money, the society, under a bill of interpleader, paid the fund into this court and the controversy is now between Mrs. Muth, on the one hand, and deceased's three sisters, on the other.

There is nothing in the evidence to show that the statute of Nebraska, under which the society was incorporated, or any other statute of that state, limits or defines the persons to whom the benefit funds of the society can be paid.

The society's constitution and by-laws offered in evidence as governing the issuance of the benefit certificate and the naming of the beneficiary, contain the following provisions bearing thereon:

"Section 3. (*a*) The objects of this society shall be to combine white male persons * * * into a secret, fraternal, beneficiary and benevolent society; * * * create a fund from which, on reasonable and satisfactory proof of death of a beneficiary member who has complied with the requirements of the society, there shall be paid a sum not exceeding $3,000 to the person or persons named in this certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers and sisters or other blood relations, or to persons dependent upon the member.

"(*b*) The beneficiary or beneficiaries shall be designated in every beneficiary certificate issued * * *.

"(*c*) In the event of the death of all the beneficiaries designated before the death of the member, if no new designation has been made, the benefits shall be paid to the surviving widow and surviving children of the member, share and share alike, provided such widow shall not be entitled to any benefits if she shall have been divorced; *provided, further*, that if there be no surviving widow, the surviving children, if any, shall be entitled to all of such benefits, and if there be no surviving children, then the surviving widow, if any, shall be entitled to the benefits; but if there be no surviving wife or children, such benefits shall be paid to the next living relation of the member in the order named in this section.

"(*d*) If there be no person surviving the member, who is a legal beneficiary as defined in this section, *  *  *  then said benefits shall revert to the beneficiary fund of this society."

If Mrs. Muth is not one of those designated in section 3 (*a*) whom the member might name as his beneficiary, then the society might successfully have resisted her claim under the certificate and the fund would, under paragraph (*d*) of that section, revert to the beneficiary fund of the society, but the society did not choose to avail itself of any defence it might have against her claim and by paying the money into court waived its rights. *Tepper* v. *Royal Arcanum, 61 N. J. Eq. 638, 644; Catholic Benevolent Legion* v. *Murphy, 65 N. J. Eq. 60, 90; Wolfstern* v. *Pennsylvania Railroad Co., 76 N. J. Eq. 78, 87; Royal Arcanum* v. *Alexander, 86 N. J. Eq. 443, 445.* Under the authority of these cases, the fraud or misrepresentation of McQueen in naming Mrs. Muth as a dependent, if any there was, cannot be taken advantage of by his sisters, but the fund being now in court, equity will treat it as McQueen's property and dispose of it as between the rival claimants upon equitable principles.

To conclude that under the society's constitution and by-laws, Mrs. Muth had an insurable interest in the life of Robert McQueen as a dependent, I would have to find that the continuance of the life of McQueen would have resulted in advantage or benefit to Mrs. Muth, or that he was under some obligation to render her care and assistance in time of need (*Thomas* v. *National Benefit Association, 84 N. J. Law 281*), but the evidence convinces me that the real situation was quite the reverse and that he lived at her home when he was out of work, without

paying board; that she cared for him while he was sick and loaned him money from time to time, and that he was in fact dependent on her. While I cannot award her the fund as a proper beneficiary under the constitution and by-laws of the society, I think the equities are all with her.

The only claim on the fund advanced by the sisters is that they are deceased's nearest relatives; that they are within the class from which the society permits a member to select his beneficiary and that the deceased having failed to name his beneficiary in conformity with the by-laws, the fund by operation of those by-laws must be paid to them. McQueen did not enter into the contract with the society for their benefit, but expressly for the benefit of another, and I find nothing in the by-laws, which, under the situation here presented, gives them the right to the fund. Paragraph (c) of section 3 does not fit the case and under paragraph (d) of that section, as before stated, the fund might revert to the society had it chosen to contest Mrs. Muth's claim. Had McQueen desired his sisters to have the money, he would have named them as his beneficiaries after his wife's death, or under paragraph (c) of section 3, he need have made no change in beneficiary and the fund would have gone to them, but when he made the change he deliberately said that he wanted Mrs. Muth to have this, the only property or estate he had to leave, and he gave the benefit certificate to her. Perhaps he wanted her to have the fund because after his wife's death, it was to her he turned in sickness and adversity and because he felt he was dependent upon her for a home and for care and comfort, but whatever may have been his reason, it was one satisfactory to him. Since this court must treat the fund as McQueen's property and his sisters have shown no special interest therein and no question of statutory prohibition, public policy or morals is involved, I feel I must follow McQueen's express wish and direct the money paid to Bertha Muth.

Neither costs nor counsel fee will be allowed.