Argued at Pendleton, November 2, reversed December 6, 1927, rehearing denied March 13, 1928.

## DORA CARR, ADMINISTRATRIX, v. OREGON-WASHINGTON RAILROAD & NAVIGATION CO.

(261 Pac. 899.)

Negligence—To Recover for Child's Injury, Plaintiff must Show Instrumentality was Attractive and Dangerous and Did in Fact Allure Child.

1. In order to recover for injury to a child on the dangerous instrumentality theory, it is necessary that the plaintiff prove that the defendant placed upon his property an instrumentality that was both attractive and dangerous and that this object did in fact allure the child to its dangerous position.

---

1. Attractive nuisance doctrine, see notes in 36 A. L. R. 34; 39 A. L. R. 486; 45 A. L. R. 982; 19 L. R. A. (N. S.) 1094. See, also, 20 R. C. L., Negligence, § 80.

Negligence—Pile of Railroad Ties Held not Attractive Instrumentality Authorizing Recovery for Death of Boy Playing Around Pile When Tie Fell.

2. Where railroad placed some ties in piles in regular order on its right of way, which ties were of a dark color, approximately 300 or 350 feet from the depot, within five feet of a barbed wire fence that marked the boundary line of the right of way, *held*, in an action for death of an eight year old boy, killed while playing around the pile when a tie fell on him, that the pile of ties did not constitute an attractive instrumentality, and hence verdict should have been directed for railroad.

Negligence—Child Injured by Tie Falling from Pile Held Trespasser or Licensee, to Whom Railroad Owed Only Duty to Avoid Wilful Injury.

3. Eight year old boy, who had no business of any kind that required his presence in the vicinity of a pile of ties on railroad right of way, where he was killed when a tie from the pile fell on him, *held* to be a licensee or a trespasser, to whom railroad owed only duty not to wilfully or wantonly injure him.

Negligence—Doctrine of Res Ipsa Loquitur Held Inapplicable to Child's Injury by Pile of Railroad Ties.

4. In action for death of eight year old boy when tie from pile on railroad grounds around which he was playing fell on him causing his death, where decedent was a trespasser or at best a licensee, doctrine of *res ipsa loquitur held* inapplicable.

Negligence, 29 Cyc., p. 443, n. 6, p. 445, n. 41, p. 447, n. 48, p. 448, n. 51, 53, 56, 60, p. 449, n. 61, 66, p. 450, n. 69, p. 453, n. 86, p. 463, n. 93, p. 465, n. 11, 19 New, p. 594, n. 8.

From Union: J. W. Knowles, Judge.

In Banc.

This is an action by the plaintiff as administratrix of the estate of Howard J. Caton. She alleges that the defendant's negligence caused the death of deceased. The verdict and judgment were for the plaintiff; defendant appeals.

Various errors are assigned; among these we find that the defendant contends that the lower court erred when it denied defendant's motion for a nonsuit and also its motion for a directed verdict. We

believe that the case can be disposed of by a consideration and disposition of these rulings.

The facts are: In the Blue Mountains of this state is a small community known as Kamela; here the defendant maintains the helper engines which it employs to haul its trains over the mountain grades. At Kamela it has installed a station-house, partly used as a hotel, also two main-tracks and six others; there are oil-tanks, small outbuildings, water-tanks, a coal chute and similar equipment. Deceased, at the time of his death, was a boy of the age of eight; his grandmother operated the hotel portion of a station-house. The hotel was comparatively small and derived almost all of its patronage from the railroad men; about three or three hundred fifty feet from the station-house the defendant had a quantity of ties for the maintenance of its tracks. These ties were nicely arranged in piles. Beyond these piles of ties were the coal chute, oil station, tanks, water-tanks and other equipment we have previously mentioned; all of the foregoing buildings, tanks, rails and other structures were upon property owned by the defendant. Some of the plaintiff's witnesses testified that the people making up the community used portions of the right of way quite freely, more especially in winter; but the points used are not indicated in the evidence. The right of way near the depot was 200 feet in width. An area about the station-house was graveled so as to mark the station grounds. White posts set in the ground, the graveled area, and the arrangement of the outbuildings indicated the area set apart for those using the depot and hotel facilities. The ties, tanks, coal chutes and other equipment were at least 300 feet away.

On May 1, 1926, when supper had been prepared the deceased asked his grandmother if he could go and call Jack Holst, a boy to whom he was related and who also stayed at the hotel, for supper; the permission being granted Howard left the kitchen and apparently went down the right of way to the vicinity of the place where the ties were piled. Here he found Jack and another boy playing about some rails that were lying upon the ground; for a while he also played with the rails, then he amused himself by walking around; a few minutes later he played upon the pile of ties; after the other two boys had gone some steps toward the station-house Howard evidently descended from the pile of ties and then one of the ties fell upon him and crushed out his life. The ties were piled five feet from the fence which marked the edge of defendant's right of way. No attractive object was near the ties; the ties themselves did not have the bright, new appearance which is inherent in newly cut lumber, but had been treated with chemical solutions in the defendant's tie-treating plant at The Dalles, which gave to them a dark appearance. They were piled in accordance with rules promulgated by the defendant; so that these rules might be more readily understood and followed by the defendant's workmen, it prepared and distributed blue-prints showing precisely how to pile ties. The method thus set forth was to place two ties upon the ground parallel to one another. Then a row of eleven ties was placed on top of these two at right angles to them; the two outer ties were placed on their nine-inch surface; the nine inner ones were placed upon their eleven-inch surface; thus the two outer ties projected two inches above the inner ties; the next layer was placed upon those eleven ties in

a similar fashion except at. right angles. This arrangement thus allowed an air space between the rows. Two of the piles contained nine layers of ties, each, including the two foundation ties; the third pile was a fractional pile containing only two and a portion of a third layer of ties. These piles were not permanent structures, but constituted a surplus to which the maintenance department might have access from time to time for the repair of the defendant's road bed.

The plaintiff charges that the defendant was negligent in its method of piling the ties; particularly the complaint alleges:

" * * that the top row of ties on the westerly pile extended north and south lengthwise and were so laid that there existed a ledge only 5½ inches wide to support the outside tie on the east side thereof; that said top row of ties should have had, but did not have, a tie placed on the center thereof at right angles with said ties as a means of holding them securely in place; that said piles of ties were thus maintained by said defendant at all times herein complained of; that because of the narrowness of the ledge aforesaid, the said outside tie on the top of the east side of the westerly pile of ties rested insecurely thereon and was liable to fall from its position to the ground and because of that fact and the manner in which said ties were piled, said piles were dangerous to anyone near them and were also rendered dangerous by the failure of said defendant, to place a binder tie on top of said westerly pile of ties, as alleged, all of which danger was at all times known to said defendant but that said defendant failed to place an enclosure around said piles of ties as a protection to people who might be near them, or to place any sign thereon as a warning thereof to anyone approaching to whom the danger was unknown. * * That said defendant in piling said ties, and particularly the out-

side top tie on the east side of the west pile, and maintaining them as alleged, was guilty of carelessness and negligence; that said defendant was likewise careless and negligent in not placing a binder tie on top of said pile; that said defendant was also negligent and careless in not placing an enclosure around said ties to prevent the children, including the deceased, who were allowed by said defendant to play in said yards and other children from having access to said piles and in not placing a notice or sign thereon, warning them that it was dangerous to approach said ties."

REVERSED.

For appellant there was a brief over the names of *Mr. Arthur C. Spencer, Messrs. Cochran & Eberhard* and *Mr. W. A. Robbins,* with oral arguments by *Mr. Roy F. Shields* and *Mr. George T. Cochran.*

For respondent there was a brief and oral argument by *Mr. E. R. Ringo.*

ROSSMAN, J.—Both parties have treated the law applicable to the foregoing facts as though this court has embraced that body of law frequently referred to by the name of turntable cases, the pioneer of which was *Lynch* v. *Nurdin,* 1 Q. B. 113 (Eng. Reprints, 1041), and which first received serious attention when the federal Supreme Court announced its decision in *Sioux City P. R. Co.* v. *Stout,* 17 Wall. 657 (21 L. Ed. 745). This court has many times dealt with groups of facts somewhat analogous to those embraced in the attractive nuisances cases but has never been compelled to squarely adopt or reject the doctrine; some of our cases are: *Hill* v. *Tualatin Academy,* 61 Or. 190 (121 Pac. 901); *Riggle* v. *Lens,* 71 Or. 125 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A,

150); *Burroughs* v. *Pacific Tel. & Tel. Co.*, 109 Or. 404 (220 Pac. 152); *Cooper* v. *North Coast Power Co.*, 117 Or. 652 (244 Pac. 665, 245 Pac. 317); *Fisher* v. *Burrell*, 116 Or. 317 (241 Pac. 40); *Haynes* v. *Oregon-Washington R. & N. Co.*, 77 Or. 236 (150 Pac. 286); *Ward* v. *Southern Pac. Co.*, 25 Or. 433 (36 Pac. 166, 23 L. R. A. 715); *Kesterson* v. *California-Oregon Power Co.*, 114 Or. 22 (228 Pac. 1092); *Rathbone* v. *Oregon R. R. Co.*, 40 Or. 225 (66 Pac. 909).

Since the doctrine of the turntable cases found its way into some units of our American jurisprudence, the analysis and criticism which it has received from courts and writers has revealed both weakness and strength in the doctrine. The very fact that it has survived the criticism and found its way into the law of a very large number of jurisdictions is quite persuasive that its foundation is something more substantial than the court's sympathy for an injured child. But the criticism of the doctrine has shown to many courts the wisdom of limiting the application of the doctrine more stringently than the first decisions indicated. Thus the federal Supreme Court has very recently said:

" * * but the doctrine needs very careful statement not to make an unjust and impracticable requirement. * * But the principle, if accepted, must be very cautiously applied." *United Zinc & Chemical Co.* v. *Van Britt*, 258 U. S. 268 (36 A. L. R. 28, 66 L. Ed. 615, 42 Sup. Ct. Rep. 299).

The fallacy of the invitation fiction which originally was the backbone of the doctrine has been quite fully revealed. For instance, suppose that the child who has responded to the so-called invitation to come and play should carry away the attractive instrumentality after having played with it, and is now

being sued for conversion, or is being prosecuted by the state; or let us suppose that this act has seriously injured the object, and that he is being sued for damages,—would the so-called invitation become defensive matter in such a case? We do not believe for a moment that any court would carry the doctrine to such length, for the very excellent reason that no invitation in fact existed. Some time ago Judge JEREMIAH SMITH very clearly pointed out that temptation is not the equivalent of invitation: 11 Harvard Law Review, 349. Some courts which have refused to accept the fiction of the invitation have undertaken to create another fiction, that is, that a child cannot be a trespasser. Upon reflection, this would seem to be an equally unsatisfactory basis for the doctrine. Other courts have sought to rest the doctrine upon the rule *sic utere tuo ut alienum non laedas,* but Judge SMITH points out that this is an unsound foundation for the doctrine. Among other weaknesses pointed out by him is that the maxim just quoted refers only to acts the effect of which extend beyond the limits of the property.

If we are to accept the doctrine at all, it would seem far better to treat the facts as they actually come to us and not to veil them by an application of a fiction. It would seem to us that a child that enters upon the property of another without an express invitation is like an adult, a trespasser, and that some children at least are capable of becoming trespassers. But it does not necessarily follow that his status as a trespasser must necessarily deprive him of relief. There are instances recognized in the law, where the owner of real property is liable to a trespasser for an injury inflicted: *Ruocco* v. *United Advertising Corp.,* 98 Conn. 241 (119 Atl. 48, 30 A. L. R. 1237);

*Kalmich* v. *White,* 95 Conn. 568 (111 Atl. 845) ; *Sklad-zien* v. *Sutherland Bldg. Co.,* 101 Conn. 340 (125 Atl. 614) ; *Fitzpatrick* v. *Penfield,* 267 Pa. 564 (109 Atl. 853) ; for a discussion and collection of cases see 29 Cyc. 442. In the cases where a trespasser fails to recover, the denial of liability results not from his mere status as a trespasser, but because his presence upon the property was not known and should not have been anticipated. In the attractive instrumentality cases the law exacts of the owner of the land a duty to trespassing children, because he has good reason to know of their presence. The rule comes into application when an owner of property deposits upon it at a point near a highway or public place where children are in the habit of congregating, an object which attracts the attention of children and when it is shown that he knows, or in the reasonable exercise of his faculties should know, that it is attracting to itself children; it must further appear that this attractive instrumentality will probably injure the children. Here the law imposes upon the property owner a duty to exclude the children, or guard the device. The duty is exacted because he knows, or should know that he is attracting children whose safety will probably be affected unless he exercises precaution. See *McAllister* v. *Jung,* 112 Ill. App. 138; also annotation to 36 A. L. R. 34.

This doctrine was first applied in this country in *Sioux City P. R. Co.* v. *Stout,* where the defendant placed near a highway a turntable. At a slight expense it could have rendered the turntable stationary when not in use. Upon the occasion in question some children moved the turntable and one of them was injured. Since the announcement of the decision in that case, other plaintiffs have endeavored to per-

suade the courts to apply the rule to a vast variety of objects; some of them were near highways and public places; others were not; some have been mechanical like a turntable; others have been piles of lumber; in some of them the expense of applying the precautions alleged by the plaintiff would have been great; in other instances, like that of the *Sioux City P. R. Co.* v. *Stout* case, the expense would have been slight. In these several hundred cases which have come to the courts following *Sioux City P. R. Co.* v. *Stout,* the allurements described in the complaint have covered the full range from a cotton-gin to a maiden girl. See 36 A. L. R. 34 and *Johnson* v. *Atlas Supply Co.* (Tex. Civ. App.), 183 S. W. 31. This situation has caused the courts to inquire concerning the limitations to be placed upon the rule. Thus the Michigan court in *Ryan* v. *Towar,* 128 Mich. 463 (87 N. W. 644, 92 Am. St. Rep. 481, 55 L. R. A. 310), was asked:

"Here we have the doctrine of the turntable cases carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow or a lawn mower or a spade upon his lawn; a rake, with its sharp teeth pointing upward, upon the ground or leaning against a fence; a bed of mortar prepared for use in his new house; a wagon in his barnyard, upon which children may climb, and from which they may fall; or who turns in his lot a kicking horse or a cow with calf—does so at the risk of having the question of his negligence left to a sympathetic jury. How far does the rule go? Must his barn door, and the usual apertures through which the accumulations of the stables are thrown, be kept locked and fastened, lest twelve-year-old boys get in and be hurt by the animals, or by climbing into the haymow and falling from beams? May a man keep a ladder, or a grindstone, or a scythe, or a plow, or a

reaper, without danger of being called upon to reward trespassing children, whose parents owe and may be presumed to perform the duty of restraint? Does the new rule go still further, and make it necessary for a man to fence his gravel pit or quarry? And, if so, will an ordinary fence do, in view of the known propensity and ability of boys to climb fences? Can a man nowadays safely own a small lake or fishpond? And must he guard ravines and precipices upon his land? Such is the evolution of the law, less than thirty years after the decision of *Sioux City, etc., R. Co.* v. *Stout,* when with due deference, we think some of the courts left the solid ground of the rule that trespassers cannot recover for injuries received, and due merely to negligence of the persons trespassed upon.''

In *Uthermohlen* v. *Bogg's Run Min. & Mfg. Co.,* 50 W. Va. 467 (40 S. E. 410, 88 Am. St. Rep. 884, 55 L. R. A. 911), we find:

''That statement is very broad, as it includes any dangerous thing which in nature has a tendency to attract the childish instinct of children to play with it. It is not confined to machinery. Where do we stop under this head? If machinery, what does it include? In these days of machinery, when it has so largely released the hands of man, the rule of dangerous and attractive machinery would be comprehensive. What things would be deemed dangerous under the rule above quoted from Thompson? What machinery would be dangerous? Almost all machinery is, in some conceivable circumstances or contingencies, dangerous. Surely we cannot deny an owner's use of his property by denying to him machinery and appliances that may, under some circumstances, be dangerous. But the thing doing the injury must also be attractive to children. Where do we stop under this head? When we go to say what machinery is attractive to some child, or even to children, we enter upon a wide, uncertain field. Under this rule the

owner of land must infallibly judge in advance what is a machine or appliance both dangerous and attractive, on pain of suffering heavy damages. What a constant menace to ownership of real estate! What an infringement upon dominion over private property! It is in a sense, and in no small degree, a taking of private property, because it detracts from the freedom of its use.''

The above situation has caused many courts to limit the application of the doctrine to instrumentalities which are generally considered as dangerous. Thus in *Branan* v. *Wimsatt*, 54 App. D. C. 374 (298 Fed. 833, 36 A. L. R. 19), the court said:

"In our opinion, the rule announced in the Turntable Cases is inapplicable to property not *per se* dangerous, or peculiarly alluring or attractive to children, and excludes minors who have reached the age of discretion, or who, knowing the hazard, assume the risk of doing that which will imperil their lives or limbs.''

And the court held that a lumber-yard ''was not an attractive nuisance or *per se* dangerous.'' In *Brown* v. *Salt Lake City*, 33 Utah, 222 (93 Pac. 570, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004, 14 L. R. A. (N. S.) 619), the court held:

"We are constrained to hold, therefore, that the doctrine of the turntable cases should be applied to all things that are uncommon and are artificially produced, and which are attractive and alluring to children of immature judgment and discretion, and are inherently dangerous, and where it is practical to guard them without serious inconvenience and without great expense to the owner.''

And in *Johnson* v. *Atlas Supply Co.*, *supra*, we find:

"As indicated, however, by our Supreme Court in *San Antonio & N. P. Ry. Co.* v. *Morgan*, 92 Tex. 98

(46 S. W. 28), the difficulty in cases where an implied invitation is relied upon is to determine just what state of facts is legally sufficient to establish the alleged implied invitation. Such conclusion is not to be drawn from the fact that the person against whom complaint is made maintains upon his premises things ordinarily in existence and use, such as rivers, creeks, ponds, wagons, axes, plows, woodpiles, haystacks, and the like, or even, as we should perhaps add, an attractive maiden or daughter. To admit that an invitation may be implied from attractions such as these would be, as said in the case already cited, 'contrary to reason, lead to vexatious and oppressive litigation,' and impose upon owners such a burden of vigilence and care as to materially impair the value of property and seriously cripple the business interests of the country.' "

Whenever this court has dealt with situations analogous to those of the turntable cases, it has used similar expression. For instance in *Riggle* v. *Lens,* 71 Or. 125 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150), we said:

" * * The great majority of the cases upon this point hold that the landowner is liable only for accidents occurring on his land by reason of dangerous, unguarded machinery, permitted or created by him, or some concealed, dangerous condition thereon that is attractive to children whereby they may be injured; otherwise he is not liable."

In *Hill* v. *Tualatin Academy, supra,* the defendants had placed upon the college grounds a gopher gun which this court found to be a dangerous instrumentality. In *Riggle* v. *Lens, supra,* the attractive object which brought the child upon the defendant's premises was a mill-race located near the public street; in *Cooper* v. *North Coast Power Co., supra,* the allurement was a tree from which the defendant

had chopped the top; immediately overhead was a transmission wire. One should take notice, however, that the tree was not on property owned by the defendant. In *Fisher* v. *Burrell, supra,* the allurement was an excavating process carried on upon the property of the defendant in connection with which explosions took place from time to time. In *Haynes* v. *Oregon-Washington R. & N. Co., supra,* the allurement was a cave; there was no recovery.

1. It is true that in *Macdonald* v. *O'Reilly,* 45 Or. 587 (78 Pac. 753), and in *Burroughs* v. *Pacific Tel. & Tel. Co., supra,* the child was injured by wooden objects not generally regarded as dangerous; but in neither case were the facts of the turntable cases involved. In *MacDonald* v. *O'Reilly,* the pilings that took the boy's life were in a public street; in *Burroughs* v. *Pacific Tel. & Tel. Co.,* two telephone poles were placed upon a vacant lot and abandoned by the defendant. Thus the element of trespass was not involved in either case; the plaintiffs were not required to prove that the child had been allured.

Accepting the foregoing as the basis of the doctrine, that is, that a child was in fact a trespasser but that the defendant had good reason to know of his presence, we hold that it is necessary that the plaintiff should prove that the defendant placed upon his property an instrumentality that was both attractive and also dangerous, and that this object did in fact allure the child to its dangerous position.

2. Let us revert back to the facts of our case; they show that the defendant placed some ties in piles in regular order; the ties were of a dark color, approximately three or 350 feet from the depot, within five feet of a barbed wire fence that marked the bound-

ary line of the right of way; if the doctrine applies to such objects thus placed, are we in a position to say that it also applies to boxes, lumber, rocks, rails and other objects which from time to time the owner has need to place one on top of the other?

"If he is held to liability for injury to the children of Jones because of the way he piles his lumber, by the same token, as to Brown, liability would be fastened on him for the way he piles his stones, his bricks, his corn in pens, his hay ricks and his cord wood on private grounds—in fact, as has been pointedly said, every land owner will be liable for injuries to his neighbor's children under the new doctrine except the neighbor himself. We can not well write the law that way." *Kelley* v. *Sonas,* 217 Mo. 1 (116 S. W. 557, 20 L. R. A. 903).

We all know that almost the first object that a child comes in contact with when his hands have acquired a little deftness are building blocks; he thus early learns that they may tumble down one upon the other. Authorities are not lacking to the effect that the attractive instrumentality rule does not apply to such common objects as rocks, lumber and ties, when piled one on the other. In *Sandstrom* v. *Minnesota, St. P. & S. Ste. M. R. Co.,* 198 Mich. 99 (164 N. W. 472), the defendant piled some logs upon its premises; a child played about them and was injured; the verdict was for the plaintiff, it was reversed, the court holding that the verdict should have been directed for the defendant. In *Branan* v. *Wimsatt, supra,* the child was injured by the falling of the lumber pile; it was held there was no liability. In *Lynch* v. *Knoop,* 118 La. 611 (43 South. 252, 10 Ann. Cas. 807, 118 Am. St. Rep. 391, 8 L. R. A. (N. S.) 480), the court, speaking

123 Or.—18

of a lumber pile which injured a child said: "It was not such as to attract children and excite their curiosity. Under the circumstances he is not liable." In *Baltimore* v. *De Palma,* 137 Md. 179 (112 Atl. 277), a boy was injured by a lumber pile. It was held there was no liability. The same result was reached in *Kelly* v. *Benas,* 217 Mo. 1 (116 S. W. 557, 20 L. R. A. (N. S.) 903), *Vanderbeck* v. *Hendry,* 34 N. J. Law, 467, *Powers* v. *Oswego Bridge Co.,* 97 App. Div. 477 (89 N. Y. Supp. 1030), *Middleton* v. *Reutler,* 141 App. Div. 517 (126 N. Y. Supp. 315), and in *Martino* v. *Rotondi,* 91 W. Va. 482 (113 S. E. 760, 36 A. L. R. 6). See, also, *Balser* v. *Young,* 72 Pa. Sup. Ct. 502, where the contrary conclusion was reached, but with some limitations. A pile of stone has been held not an attractive instrumentality: *Little* v. *Stifel,* 126 Mo. 295 (28 S. W. 891, 47 Am. St. Rep. 668); *Kane* v. *Erie R. Co.,* 110 App. Div. 7 (96 N. Y. Supp. 810); the same has been held in regard to steel girders: *Friedman* v. *Snare,* 71 N. J. Law, 605 (61 Atl. 401, 108 Am. St. Rep. 764, 2 Ann. Cas. 497, 70 L. R. A. 147). In the following cases the object which the plaintiffs allege was an attractive instrumentality was a pile of ties; in none of them was recovery allowed: *Great Northern Ry. Co.* v. *Willard,* 238 Fed. 714 (151 C. C. A. 564); *Tonlinson* v. *Vicksburg, S. & P. R. Co.,* 143 La. 641 (79 South. 174); *Missouri, K. & T. R. Co.* v. *Edwards,* 90 Tex. 65 (36 S. W. 430, 32 L. R. A. 825); *Jenkins* v. *Great Western R. Co.,* 1 K. B. 525 (81 L. J. K. B., N. S., 378, 105 L. T., N. S., 882); *Kramer* v. *Southern R. Co.,* 127 N. C. 328 (37 S. E. 468, 52 L. R. A. 359). In *Foster* v. *Lusk,* 129 Ark. 1 (194 S. W. 855, 17 N. C. C. A. 361), the complaint alleged that the

pile was so constructed that it would readily topple over and that it was near a pile of sand which was very attractive to children; that all of this was well known to the defendant; that plaintiff, a child of four years, was injured while playing in the sand pile by the falling down of the ties; this was held to allege a cause of action. In *Kramer* v. *Southern R. Co.*, 127 N. C. 330 (37 S. E. 469, 52 L. R. A. 359), the ties were piled in a public street; the plaintiff recovered. The court said, however, that had they been piled upon the premises of the defendant, the result would have been otherwise.

In this case the boy was not allured from his home by the pile of ties; he left the hotel just before supper-time to call his playmate, and even after reaching the vicinity of the ties they were not sufficiently attractive to bring him to them at once, but he played around some rails first, then according to Jack Holst, he walked around a little and finally went over to the tie pile. Numerous authorities hold that it is not sufficient to merely show that the defendant had upon his premises an attractive, dangerous object, but the plaintiff must prove that the object allured the child to a place of danger. In the present case when Howard left the depot grounds in pursuit of Jack, he went upon the defendant's property without its consent. In *United Zinc & Chemical Co.* v. *Van Britt*, 258 U. S. 268 (66 L. Ed. 615, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28), the defendant had upon its premises, about 100 or 120 feet from the roadway a pool of water charged with poisonous chemicals, but it was very doubtful whether the pool could be seen from the roadway; two boys in wandering about saw the pool; it being

a warm day in July they removed their clothing and dived in. The court in holding defendant not liable assigned as a reason for the denial of liability the fact that the boys were not allured from the highway, but were trespassers when the allurement asserted itself upon them.

"In the case at bar it is at least doubtful whether the water could be seen from any place where the children lawfully were and there is no evidence that it was what led them to enter the land. But that is necessary to start the supposed duty."

In the case before us Howard was a trespasser or licensee, and yet even after he had gone some distance from the depot the allurement of the tie pile had not begun to assert itself. If the law should regard such a common object as a pile of ties an attractive nuisance it would lead to vexatious and oppressive litigation and impose upon owners a burden of vigilance and care which would materially impair the value of property and seriously cripple owners in making beneficial use of the property. To illustrate the full force of this observation, one need only consider for a moment the considerable variety of articles the defendant had upon its premises. For instance, there were some large concrete pipes upon the defendant's property which it proposed to use as culverts at some future time; the boys played with these on some occasions; an employee of the defendant testified that he warned the boys against playing with them and drove them off. The boys also climbed on the roof of the station-house; an employee of the defendant testified he drove them off of that place. In addition there were cars, engines, sunken tracks, elevated tracks, coal chutes and other objects of like character. Would it have been necessary for

the defendant to guard and protect this assortment of objects which might cause injury to a child? The courts have well said that no one yet has been able to build a fence which a boy cannot surmount. How helpless a defendant would be if all these objects were attractive nuisances is well portrayed in the testimony in this case; a number of defendant's witnesses testified they had warned the plaintiff and other boys and had "fired them off the property"; the plaintiff's witnesses denied all of this. The defendant's witnesses testified that they had erected four trespass signs which were intended to warn people to keep off the right of way. They brought with them blueprints showing exactly how these signs were constructed; the plaintiff's witnesses testified they had never seen these signs. Anyone who has ever seen a watchman or a caretaker attempt to drive off of property a group of active, mischievous boys knows what a difficult, if not impossible, task he has undertaken; indeed, the watchman becomes in a truthful sense an attractive nuisance himself, and the more earnest his efforts become the larger in number become the group of boys. A week before the fatal accident Howard's mother called him home when he was seated upon the pile of ties; she testified she called him not because of the ties, but because she thought the work being prosecuted near by might injure him. The evidence does not disclose that children had found the tie pile an attraction, nor that the defendant was aware that its method of piling ties was dangerous to children. Under the circumstances and in harmony with what we believe is almost the unanimous trend of authority, we are of the opinion that a pile of ties of the type described in the evi-

dence could not have been an attractive instrumentality.

3. In *Lange* v. *St. Johns Lumber Co.*, 115 Or. 337 (237 Pac. 696), this court said:

"There is a difference between one present on premises by an invitation, express or implied, and one who is merely there by permission or toleration. The one is termed an invitee and the other mere licensee. As to the former, the owner of the premises is bound to use reasonable care to prevent the infliction of hurt upon the invitee: *Keeran* v. *Spurgeon Mercantile Co.*, 194 Iowa, 1240 (191 N. W. 99, 27 A. L. R. 579). As to the latter, the owner of the premises owes no greater duty than to avoid wilful or wanton injury to the licensee."

Below the depot hotel building there were no houses, stores or anything except the defendant's tracks, equipment and structures for the maintenance of its engines. Howard had no business of any kind that required his presence in the vicinity of the scene of the accident. Under the circumstances Howard's status upon the occasion in question could not have been anything other than a licensee or a trespasser. In *Rathbone* v. *Oregon R. Co.*, 40 Or. 225 (66 Pac. 909), we find:

"One who uses the track or right of way for his own convenience or pleasure, without the permission or invitation of the company, occupies the position of a mere trespasser. The company is under no legal duty or obligation to take precautions or keep a look-out for him, its only duty being to use reasonable care not to injure him after he is discovered."

And in *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151), Mr. Justice McBRIDE, speaking for the court, used the following language:

" * * The evidence for plaintiff in the case at bar shows that the right of way of the defendant was used by residents of that vicinity as a walkway for foot travel. How long this use had prevailed does not appear. Certainly it had not been continued long enough for the public to acquire a right by prescription to use the right of way for that purpose. It is a matter of common knowledge that such rights of way and the tracks are commonly used by foot-passengers wherever they are more convenient than the ways constructed by public authorities. It goes without saying that such use is not desired or encouraged by the railway authorities, but merely suffered because of the difficulties of preventing it. Such use is never of any advantage to the transportation companies, but is a disadvantage and frequently a source of danger and annoyance; and at best, under the testimony, the deceased was a bare licensee to whom the company owed no duty beyond that of abstaining from any wilful injury."

4. Defendant did not injure him wilfully or wantonly. Since the boy was a trespasser or at best a licensee, the doctrine of *res ipsa loquitur* could have no application; indeed, it could not apply to a pile of ties. The lower court should have allowed the motion for a directed verdict; its judgment will therefore be reversed.                                REVERSED.

BEAN, J., did not participate in this decision.

BELT and COSHOW, JJ., concur in the result.