### FEDERAL MINING & SMELTING CO. v. ANDERSON.

(Circuit Court of Appeals, Ninth Circuit.    October 7, 1918.)

#### No. 3129.

1. MASTER AND SERVANT ☞278(10)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

The finding of a jury that an injury to plaintiff, whose arm was broken by a piece of steel while he was operating a cage in defendant's mine, was due to the negligence of defendant in permitting the steel to be piled so near the shaft that it was struck by the cage, *held* sustained by the evidence.

2. NEGLIGENCE ☞134(2), 136(9)—CIRCUMSTANTIAL EVIDENCE—INFERENCES—JURY QUESTION.

The cause of an accident may be inferred from circumstances, and such inferences are for the jury to draw.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by Andy Anderson against the Federal Mining & Smelting Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Featherstone & Fox, of Wallace, Idaho, for plaintiff in error.

Plummer & Lavin, of Spokane, Wash., and Therrett Towles, of Wallace, Idaho, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. [1] The defendant in error recovered in the court below a verdict and judgment for personal injuries alleged to have been sustained by him by reason of the negligence of the defendant to the action, plaintiff in error here. The plaintiff was employed in the operation of a cage of one of the defendant's mines, and while the latter was being lowered in the shaft, with the plaintiff on it, in passing the 1,000-foot level of the mine on its way to the 1,800-foot level, a piece of steel protruding from the level was struck by the cage and knocked against the arm of the plaintiff, inflicting the injury for which he sued and recovered. Lack of negligence on the part of the defendant, contributory negligence by the plaintiff, and assumption of risk by the latter were set up in defense—the latter in these words:

"That if the said plaintiff was injured on the 28th day of May, 1917, as alleged in plaintiff's complaint, he was injured by and through one of the risks of the employment and one of the risks he assumed, especially the risk of being injured in the course of his employment by some object falling down said shaft."

It was stipulated by the parties that the defendant company "at one time promulgated" this rule:

"Drills, timber, or other material must not be placed within five feet of any shaft, opening or winze."

And there was much testimony given tending to show a general disregard of the rule by the miners, including the plaintiff, and there was a good deal of testimony regarding the condition of the shaft and gates.

The trial court instructed the jury, among other things (to which instructions no exception was taken), that the plaintiff was not entitled to recover by reason of the condition of the shaft or gates, but that they might consider the condition of the shaft and of the gates, and the practicability of operating the hoisting device—

"in determining whether or not the plaintiff was guilty of contributory negligence; that is, of a want of proper care in having those gates open at the time the injury occurred, if you find that he did have them open."

The court also in its instructions said that there was but one primary ground of alleged negligence upon which it could find in the plaintiff's favor, if at all, that negligence being—

"according to the plaintiff's claim, that the defendant company permitted steel to be piled or left near the edge of the shaft, and that one of these pieces, by reason of the carelessness of the company in that respect, came so near the edge, indeed, projected over the edge there a little way, so that when the cage descended it struck the end of it and threw it upon him and broke his arm."

There were certainly some circumstances testified to tending to show that the accident occurred that way, while some of it tended to

show the contrary; and the court by its instructions left it to the jury to say whether the accident did result from the piece of steel as alleged by the plaintiff, and further whether—

"that steel came to the edge of the shaft by reason of the habitual placing of it there and leaving it there."

[2] That the cause of an accident may be inferred from circumstances does not admit of doubt. Perkins v. Northern Pac. Ry. Co., 199 Fed. 712, 719, 118 C. C. A. 150. Such inferences are for the jury to draw. "Twelve men," said the Supreme Court in Railroad Co. v. Stout, 17 Wall. 657, 664 (21 L. Ed. 745), "of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer—these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge. In no class of cases can this practical experience be more wisely applied than in that we are considering. We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed it is for the jury, and not for the judge, to determine whether proper care was given, or whether they establish negligence."

The judgment is affirmed.