CLORINDA RODRÍGUEZ, ETC., ET AL., Plaintiffs and Appellees, *v.* THE AMERICAN RAILROAD CO. OF PORTO RICO, Defendant and Appellant.

No. 5213. Argued June 23, 1931.—Decided May 17, 1932.

*M. Acosta Velarde* for appellant. *Pascasio Fajardo* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is an action for damages wherein judgment was rendered in favor of three of the five plaintiffs, Clorinda Rodríguez and Aurelia and Juliana Vélez Rodríguez, for the sum of $4,000, with costs. The complaint was dismissed as to the other two plaintiffs, Mariano and Alejandrina Vélez, as it had not been satisfactorily shown that they were the sons of Carlos Vélez, the person who died in consequence of the accident giving rise to said action.

Feeling aggrieved by that judgment, the defendant took the present appeal and has assigned in his brief seven errors as committed by the trial court: (1) in overruling its demurrer for insufficiency; (2) in rendering a judgment contrary to the pleadings and the evidence; (3) in finding that the defendant was negligent; (4) in rendering a judgment contrary to the evidence and the law; (5) in finding that plaintiffs' ancestor was not guilty of contributory negligence; (6) in rendering judgment against the weight of the evidence; and (7) in finding that the evidence showed obstinacy (*temeridad*) on the part of the defendant in setting up a defense and thereby imposing costs on the defendant without excluding attorney's fees.

As may be seen, the questions for decision are reduced to determining, from an examination of the complaint, whether the same states facts sufficient to constitute a cause of action, and from a consideration of the evidence, whether the proof might support the judgment rendered, such determination of course to be made in the light of the applicable law and jurisprudence.

The appellant, in arguing the first question, begins by citing the holding of this Supreme Court in the case of

*Miranda* v. *P. R. Ry. Light and Power Co.*, 31 P.R.R. 738, in the sense that in every case involving actionable negligence there are three essential elements: (1) the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure. The appellant maintains that the complaint is defective in that it fails to show the existence of any duty owed by the defendant to the ancestor of the plaintiffs. It goes on to say:

"The first and second paragraphs of the amended complaint refer to the capacity of the parties. It is alleged in the third paragraph that the defendant built a station in Mayagüez for freight and passenger traffic; that this station is connected with a municipal street by an alley located in the northern part of the station; and it is further alleged:

" 'which station was so built by the defendant as to afford access thereto on its northern side, which lies at the end of the aforesaid alley connecting it with McKinley Street and in addition with another alley on the eastern side, that is, on the rear part of the station.'

"The fourth, fifth, and sixth paragraphs of the amended complaint, textually transcribed, read as follows:

" '*Fourth:* That in the said alley or passageway to the rear of the station, the defendant by its agents, servants or employees, wilfully and negligently installed and drove in the ground four iron posts, each about two and one-half feet high and about two meters apart, which existed at the time of the accident hereinafter described and were maintained there, installed precisely at one end of said station, on land belonging to the defendant and through which the pedestrians entered or left said station.

" '*Fifth:* That on or about March 19, 1927, between eleven and twelve o'clock at night, Carlos Vélez Almodóvar, husband of plaintiff Clorinda Rodríguez and father of the other four plaintiffs in this action, upon leaving said station and while walking on the said alley or passageway which the defendant wilfully keeps for the transit of pedestrians without lights or warning signs, collided with the upper portion of the second of the aforesaid posts, and received such a heavy blow on his testicles and stomach that it resulted in an hernia and mutilation of his testicles; in consequence of which

the said Carlos Vélez Almodóvar had to be operated for both injuries, at the Municipal Hospital of this city, several days afterward, and he died shortly thereafter.

"'*Sixth*: The plaintiffs allege that said rear exit of the station was not kept lighted or provided with danger signals, at the time of the accident, by the servants of the defendant.'

"Upon reading the allegations of the complaint we ask ourselves, what relationship existed between the plaintiffs' ancestor and the defendant? To this question the answer must necessarily be that no relationship whatever existed. The amended complaint merely states that on March 19, 1927, between eleven and twelve o'clock at night, Carlos Vélez, upon leaving the station, etc., etc. It is not alleged in the complaint that a train had arrived at the station, nor that Vélez was a passenger, or an employee, or a person patronizing the defendant. The only thing alleged is that he was leaving the station. The complaint is devoid of any allegation showing the existence of any duty owed by the defendant to the plaintiffs' ancestor.

"It is true that in the third paragraph it is alleged that on the easter side of the station, that is, to the rear thereof, said station is connected with an alley; but it is not alleged that said alley was used by the passengers or by persons patronizing the railroad or having any business or contractual relationship with the defendant, nor that said alley is open for the use of the public or by the patronizers of the defendant. The mere existence of an alley does not imply a right to its use by any person, and the fact that there is an exit in the rear part of the station leading to the alley does not imply a right to the use of this passageway by any person, since all that it proves is that from the station one could enter into said alley."

The appellant goes on arguing extensively and citing numerous cases in support of its conclusions. Appellees in their brief also answer aptly and with copious citations. This is a case where counsel for the parties worked with great enthusiasm and persistence. The study and determination of the controversy is not, by any means, an easy matter.

An examination of the complaint shows in our opinion that it presents a weak case with respect to the existence of a duty owing from the defendant towards the plaintiffs'

ancestor, but it can not be maintained that it absolutely fails to make out a case.

It is alleged therein that the defendant is authorized to operate and does operate a railroad in the Island for the transportation of freight and passengers; that it erected a station in the city of Mayagüez for the purpose of loading and unloading freight and taking and leaving passengers, located at some distance from McKinley Street and connected with it by means of an alley. It is further alleged that the defendant, through its employees, drove in some iron posts in a place through which the pedestrians passed in order to enter or leave the station, a place "which the defendant voluntarily keeps for the public transit," and that, notwithstanding this, allowed it to remain dark during the night, without any warning signal; that on the night in question Carlos Vélez, while walking along the aforementioned place, collided with the second of said posts, and received the blow that caused his death.

It is true that the complaint would have stated a stronger case had it alleged that Vélez was a passenger going to board a train, but we believe that, such as it is, it shows the existence of the duty owed by the defendant to the plaintiffs' ancestor, because it was the defendant who voluntarily opened the alley to the public and who voluntarily drove in the posts that endangered the traffic thereon when there was not sufficient light to see them. In such a case, it is not necessary that there should exist a statute or ordinance specifically imposing the duty to keep the premises illuminated at night. Such a duty arises from the general principle that regulates the relations between men. If one person invites another to pass upon a given place, he should not put in that place something that may injure the invitee.

The action brought in this case is based on the general provisions contained in sections 1802 and 1803 of the Civil Code, 1930 ed.; and in the case of *Marrero* v. *American Railroad Co.,* 33 P.R.R. 201, it was held that—

"It is not necessary to mention in the complaint the law, regulation, jurisprudence or custom imposing upon the defendant a duty toward the plaintiff if from the facts the existence of such a duty appears; nor need all of the details of the facts be set forth, as they may be established later by the evidence."

Besides, it has been held by the Supreme Court of the United States that—

"While a railway company is not bound to the same degree of care in regard to mere strangers who are even unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts." *Railroad Company* v. *Stout*, 84 U. S. 657.

Lastly, it seems advisable to add that the evidence herein shows a stronger case than the one made out by the complaint, as there was testimony which was admitted without objection to the effect that Vélez was a passenger on his way to the station to catch a train, and this Court has said:

"We ourselves have been quite liberal in treating complaints as amended to conform to the evidence under certain conditions, and do not now overlook the fact that:

" 'It has been held also that even if a complaint is subject to demurrer for failure to state a material fact essential to the recovery, and a demurrer is overruled, a judgment for the plaintiff will not be reversed on appeal where it appears to be right, and the omitted fact was the principal issue on the trial; but the court will treat the complaint as amended to conform to the proof, if necessary to support the judgment.' Note to *Ellinghouse* v. *Ajax Live Stock Co.*, L.R.A. 1916 D, page 836, at page 859." *Miranda* v. *P. R. Ry. Light & Power Co.*, 31 P.R.R. 738, 742.

See also *The People* v. *Heirs of Valdés*, 31 P.R.R. 213.

This leads us to a consideration of the remaining assignments of error, all related to the evidence.

By virtue of the evidence introduced at the trial, the lower court made the following findings:

"That the defendant is a public service corporation engaged, in this Island, in the operation of a railroad for the transportation

of freight and passengers, having laid a railroad track across the city of Mayagüez, from north to south, and that the defendant has erected and maintains a station in the city of Mayagüez called 'Estación del Pueblo,' which it has been using for many years for its activities and especially for taking or leaving passengers conveyed by the trains which are operated regularly and daily.

''That said station is built in such a way that the general public has been having access to it both through the front part thereof, which faces the railroad tracks, and through the rear part, where an alley exists on which the defendant has built a sidewalk for the entrance and exit of the general public; and that the people having business with the defendant, enter and leave said station by either exit.

''That the plaintiff Clorinda Rodríguez, known as Flora Rodríguez, was married to Carlos Vélez Almodóvar, from which marriage they had two daughters called Aurelia and Juliana, the latter known also as Julia, bearing the surnames of Vélez and Rodríguez, who are minors and are now under the *patria potestas* of their aforesaid mother.

''That the said Carlos Vélez Almodóvar, one day in May, 1929, at night, while walking in the rear part of the station on the sidewalk that the defendant had built there, annexed to the said building for the use of the general public, and on land held by the defendant, due to the darkness of said alley and to the lack of any danger signal, the said Carlos Vélez Almodóvar, while stepping off at the end of the sidewalk which the defendant had built on that side of the premises for the use of the general public, collided with one of the iron posts therein situated, having an approximate height of three feet, and which had been placed exactly at the termination of the sidewalk by the employees of the defendant; that this post, together with others impeded vehicle traffic in said alley, but did not stop the transit of pedestrians who could walk freely and comfortably along that place. That in consequence of the collision with the upper part of the aforesaid post, the said Carlos Vélez Almodóvar suffered a severe blow in the stomach and testicles which produced an hernia and a mutilation of the intestines requiring a surgical operation and causing his death shortly thereafter.

''That at the time of the accident, and shortly before the train to San Juan had passed through Mayagüez, the said Carlos Vélez Almodóvar was walking in the customary way on the sidewalk that the defendant had constructed in the rear part of the station, and which at the time the defendant negligently kept dark and without

any warning of the post existing at the end thereof, the decedent going towards said station for the purpose of securing a berth on a sleeping-car of said train in order to go to San Juan.

"That said accident occurred on lands occupied by, and under the control of, the defendant, and that the post that caused the damage in question, as well as the other posts, was placed there by the employees of the defendant; that deceased Carlos Vélez Almodóvar while walking in the aforesaid place was not a trespasser but an invitee of the defendant and then and there was on his way to the station in order to secure a sleeping-car ticket to go to the city of San Juan and as such invitee, the defendant owed him the duty to use reasonable care to protect his person from injury; and that the accident in question was due solely and exclusively to the negligence of the employees of the defendant in maintaining at night, and without any warning of its existence, a post situated in a place through which the general public was accustomed to pass to and from the station, and which the defendant voluntarily prepared for the public to enter and leave said station, and as to which the employees of the defendant were bound to presume that pedestrians were liable to be injured by said obstruction.

"From the ocular inspection made by this court of the defendant's station, where the accident in question occurred, it was able to ascertain that there exists an alley fairly wide in the rear part of the building which connects the street called Santiago Veve Boulevard with another street known as Virginia Street; that this station entrance connecting both streets was the one obstructed by the defendant with the posts in question and that judging from the court's estimate of the place where the witnesses indicated that the posts were located, no vehicle could pass through that place as said posts impeded this, but it was otherwise as to the free transit of persons on foot. That the sidewalk in question is situated in the rear part of the defendant's station; that it is about one yard wide and that in that part there is a door giving access to the station and another door which communicates with the upper floor of the building; and that this sidewalk is an integral part of the station and extends throughout the entire length of the same. The court was also able to conclude from the evidence adduced and the ocular inspection made that the posts in question are not at present in their original position, which shows that they were pulled out after the accident occurred.

"That said Carlos Vélez Almodóvar, previous to the accident, was a person enjoying good health and was about 49 years old on the day of the accident; that the proximate and sole cause of his

death was the blow he received and the surgical operation that the accident made necessary, and that if the accident had not occurred, it is to be presumed that he would have lived several years longer, during which time he could have furnished his family with the corresponding financial assistance, and that said family is now deprived of said assistance and benefits.

"Similarly, the court considers as proved that if Carlos Vélez Almodóvar suffered from an hernia, the proximate and sole cause of his death was not such ailment but the blow that, not only strangulated said hernia, but also injured his intestines.

"*     *     *     *     *     *     *     *

"It is to be noted that the complaint states that the accident in question occurred at the time the aforesaid Carlos Vélez Almodóvar was leaving defendant's station, whereas the evidence shows that the accident happened when he was going to the station for the purpose of getting sleeping accommodations on the train to San Juan; but considering that the attorney for the plaintiffs, in order to conform the pleadings to the proof, asked leave of the court during the trial to have this allegation regarded as amended in the sense that the accident occurred when the deceased was on his way to the station instead of when he was leaving it; that permission was also requested to the effect that the names of the plaintiffs, Clorinda Rodríguez and Juliana Vélez y Rodríguez should be considered as amended, since they were known as Flora Rodríguez and Julia Vélez y Rodríguez, respectively; and that this court granted both requests, these particulars will be disregarded."

We have a perfect recollection of the oral arguments submitted by counsel for the appellant corporation, both at the hearing of the motion to dismiss and of the case on the merits. We have carefully read its extensive and thorough brief and have studied every detail of the evidence, and although we must admit that we have entertained some doubts, not as to the scope, but as to the truthfulness of the testimony of some of the witnesses in regard to some essential facts, we do not feel ourselves justified in law, nor in the exercise of any discretion that we might have in cases of this kind, in reversing the conclusions of the trial court announced in its findings above transcribed. Not only was it incumbent on the trial court to weigh the evidence and to determine its

scope, but also to decide as to the credibility of the witnesses. Its findings of fact show that it exercised its power in this case only after careful consideration and after making an ocular inspection of the place where the accident occurred. It will be extremely hazardous for us to try to substitute our judgment for that of the lower court. It might happen that with the best of intentions to do justice we would be reversing a decision which fully imparts it.

If we were to follow the appellant through its arguments —the appellant has not overlooked any detail or aspect of the case—this opinion, long as it is, would be extraordinarily lengthened without any benefit to the jurisprudence, and only to arrive at the same conclusion that we have already stated.

The appellant insists that by all means the damages should have been assessed at a smaller amount. In the complaint $13,200 was claimed. The court awarded $4,000. It based its award on the following finding:

"Similarly, the court considers as proved that said Carlos Vélez Almodóvar was the owner of a vegetable garden located in this city, which he personally cultivated, and which yielded approximately $20 a week with which he paid the subsistence expenses of the afore-said wife and daughters; that in consequence of the accident in question the said relatives have been and will continue to be deprived of such income; and considering the age and sound health of the deceased at the time of the accident, the expenses incurred by reason of his illness, the mental suffering of his relatives, the loss of his company, and the other circumstances of the case, this Court holds that there should be awarded to the plaintiffs, as damages, the sum of FOUR THOUSAND DOLLARS, which is the sum for which judgment is ordered to be entered against the defendant, The American Railroad Company of Porto Rico, in favor of the plaintiffs, Clorinda Rodríguez known as Flora Rodríguez, and of her daughters Aurelia and Juliana, the latter known as Julia, Vélez Rodríguez, the first one as wife of the deceased, and the other two as legitimate daughters, with costs."

The fixing of the amount of damages is a matter within the province of the trial court and the award granted should not be disturbed unless manifestly erroneous or grossly ex-

aggerated. It can not be maintained that such award is excessive in the instant case.

As regards the costs, the circumstances are different. The defendant did not learn of the accident at the time it occurred. Suit was brought against it and it was only natural that it should defend, for it was uninformed as to the facts and the case seemed doubtful. It did this persistently, firmly, and ably, but not with temerity, in our judgment. Its arguments reveal an honest conviction that the complaint in its essential facts, without the proof of which it must have failed, was not tenable, and in view of these circumstances, we think that if costs are to be imposed the same should not include attorney's fees, especially when account is taken of the attitude we have assumed in regard to the amount of damages awarded.

The judgment, as thus modified, should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.